**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| KERRY LEE THOMAS, <br><br> Plaintiff, <br><br> v. <br><br> ROBERT JOHNSON, <br> ERIC M. BRUSS, <br> WAYNE SCHULTZ, <br> and THE ESTATE OF ROBERT JOHNSON, <br><br> Defendants. | Case No. 4:23-cv-00662 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**NATURE OF THE CASE**

1.     Kerry Lee Thomas is a 36-year-old Black man and loving father of three girls. On February 22, 2021, Sergeant Robert Johnson of the Harris County Constable's Office (Precinct 1) ordered his police dog to attack Mr. Thomas while he lay prone on the ground with his hands outstretched and clearly visible.[1] Mr. Thomas made no attempt whatsoever to flee, fight back, or resist.[2] He was unarmed.

2.     When Defendant Johnson unleashed his specially trained attack dog on Mr. Thomas, it sunk its teeth deep into the flesh of Mr. Thomas's upper arm. It clamped its jaws shut, and yanked repeatedly.[3] Just steps away, Defendant Deputy Eric M. Bruss and Defendant Sergeant Wayne

---

[1] Exhibit 1 (Excerpt of Defendant Johnson's Body Worn Camera Footage) at approximately 19:27:23. Exhibit 1 will be promptly mailed to the Court on a USB drive, per the clerk's instructions. It is also available at http://bit.ly/3SorHCh.
[2] *Id.* from approximately 19:22:10 to 19:28:05.
[3] *Id.* beginning at approximately 19:27:24.

1

Schultz stood, watching.[4] Not only did they fail to stop Johnson, they helped him: aiming a gun on Mr. Thomas, taunting and threatening him, and lying to cover up their unjustified and unlawful conduct.

3.        After the attack, Defendant Johnson laughed and cheered.[5] He later joked with a fellow officer that his dog was now "full" and "satisfied."

4.        Mr. Thomas continued to cry out in agony. He was in such pain that he believed his right arm had been torn off.

5.        At various points, Mr. Thomas pleaded for someone to call his mother. From the back of the ambulance, he called out for his three daughters: "My daughters! Where's my daughters? My princesses!"

6.        Defendants' attack left Mr. Thomas with severe lacerations, puncture wounds, permanent scarring, persistent muscle damage, and other impairments to his right arm.

7.        Even now, he continues to suffer serious and long-term mental and emotional consequences.

8.        Mr. Thomas is far from the first Black man to be brutalized in this way. Even before the proliferation of modern "K-9 units," dogs have long been used to terrorize Black people. Throughout the United States, and especially in the South, dogs were bred and groomed to maul enslaved Black people for running away or otherwise angering their enslavers.[6] Historians have

---

[4] Defendant Schultz was promoted from Corporal to Sergeant on April 30, 2021.
https://www.facebook.com/Precinct1Constable/posts/retirement-and-promotionsfriday-was-a-busy-day-at-precinct-one-with-several-prom/3867782976631321/.
[5] Exhibit 1 at approximately 19:28:18.
[6] Tyler D. Parry & Charlton W. Yingling, *Slavehounds and Abolition in the Americas*, 246 Past & Present 69, 81, 91 (2020), available at
https://academic.oup.com/past/article/246/1/69/5722095.

drawn a straight line from this gruesome antebellum practice to the modern use of attack dogs by policing agencies like the Harris County Constable.[7]

9.      With eyes wide open to that history, Mr. Thomas brings this civil rights lawsuit against the estate of Robert Johnson, who subjected him to an unprovoked and illegal dog attack and then laughed about it, as well as against Sergeant Schultz and Deputy Bruss, who looked on as a terror-stricken Mr. Thomas suffered, without any regard for his humanity.

## PARTIES

10.     Mr. Thomas is a 36-year-old Black man and father of three teenage girls. He is a resident of the State of Texas.

11.     Defendant Robert Johnson was a sergeant with Precinct 1 of the Harris County Constable's Office, where he worked since 2013. He joined the Constable's Office after being fired from the Harris County Sheriff's Office for on-the-job sexual misconduct.[8] In May of 2021, Defendant Johnson confessed to sexually abusing multiple children, at least one of whom he reportedly drugged, in coordination with a dispatcher and fellow officer.[9] After a six-hour standoff with police, Johnson killed himself. He is sued in his individual capacity.

12.     Defendant Estate of Robert Johnson is the successor in interest of Defendant Robert Johnson.

---

[7] *See* Larry H. Spruill, *Slave Patrols, "Packs of Negro Dogs" and Policing Black Communities*, 53 Phylon 42 (2016), available at
https://is.cuni.cz/studium/predmety/index.php?do=download&did=139755&kod=JMB215
[8] Mike Glenn, *Deputies Fired Over Sexual Misconduct*, Chron (Feb. 6, 2013), https://www.chron.com/news/houston-texas/houston/article/Deputies-fired-over-sexual-misconduct-4258117.php.
[9] Jessica Wiley, *Deputy's Dying Confession Leads to Child Sex Crime Charges Against 2 Colleagues*, ABC 13 (May 24, 2021), https://abc13.com/deputy-suicide-harris-county-precinct-1-sgt-accused-of-sex-assault-child-abuse-allegations/10673478/.

13.     Defendant Eric M. Bruss is a deputy with Precinct 1 of the Harris County Constable's Office. He is a resident of the State of Texas. He is sued in his individual capacity.

14.     Defendant Wayne Schultz is a sergeant with Precinct 1 of the Harris County Constable's Office. He is a resident of the State of Texas. He is sued in his individual capacity.

## JURISDICTION AND VENUE

15.     Mr. Thomas brings this action under the Fourth and Fourteenth Amendments to the United States Constitution, as authorized by 42 U.S.C. § 1983.

16.     The Court has jurisdiction over Mr. Thomas's claims under 28 U.S.C. §§ 1331 (action arising under the Constitution and federal law) and 1343(a) (action to redress deprivation of civil rights).

17.     Venue is proper under 28 U.S.C. § 1391(b) because one or more Defendants reside in this judicial district and all Defendants are residents of Texas, or, alternatively, because a substantial part of the events or omissions giving rise to Mr. Thomas's claims occurred in this district.

## STATEMENT OF FACTS

### A.  Defendant Johnson Directed His Dog to Attack Mr. Thomas Without Justification.

18.     At approximately 7:15 p.m. on February 22, 2021, Defendant Johnson drove to Capstone Drive in Houston in response to a dispatch report of two men making noise outside of a home.

19.     The dispatcher stated over the radio that the caller had his weapon out. As he drove, Defendant Johnson confirmed over the radio that it was the caller—not the suspects—who was armed.[10]

---

[10] Exhibit 1 at approximately 19:20:31; 19:20:46.

20.     Even before pulling up to the location, Defendant Johnson was irate. While driving through the streets, body worn camera footage captures him barking, "Just stop right in the middle of the fucking way, you dumb bitch."[11]

21.     Defendant Johnson was the first to arrive on the scene. Mr. Thomas and his friend, Rapheal Gray, watched Defendant Johnson's police car speed up the street towards them, then suddenly halt near them. Mr. Thomas was in the front passenger seat of a red PT Cruiser.[12] Mr. Gray was in the driver's seat.[13]

22.     Defendant Johnson exited his car and began shouting commands at them.[14]

23.     Mr. Thomas immediately exited the car.[15] He stood with his hands high in the air and empty, facing Defendant Johnson.[16]



---

[11] Exhibit 1 at approximately 19:19:48.
[12] *Id.* at approximately 19:22:05.
[13] *Id.*
[14] *Id.* at approximately 19:21:55.
[15] *Id.* at approximately 19:22:10.
[16] *Id.* at approximately 19:22:10.

24.     Defendant Johnson continued shouting commands as he let his attack dog out of the backseat.[17]

25.     He lifted his gun and aimed it at Mr. Thomas.[18]

26.     Defendants Bruss and Schultz arrived shortly after Defendant Johnson.[19] Defendant Bruss unholstered his gun and aimed it at Mr. Gray.

27.     Defendant Schultz unholstered his gun and aimed it at Mr. Thomas.

28.     Neither Mr. Thomas nor Mr. Gray had a weapon. Neither Mr. Thomas nor Mr. Gray made any attempt to run or resist.

29.     After arriving on the scene, Defendants gave a series of conflicting commands that would have been confusing to any reasonable person, let alone one facing a snarling dog and multiple armed officers, ready to shoot. Mr. Thomas nonetheless did his best to follow their orders.

30.     Defendants Bruss and Johnson commanded Mr. Thomas to get on the ground. Defendant Johnson continued aiming his gun at him.[20] Mr. Thomas asked, "Me?"[21] He then slowly lowered himself to the ground.

---

[17] Exhibit 1 at approximately 19:22:14.
[18] *Id.* at approximately 19:22:21.
[19] Johnson arrived at approximately 7:21:55 p.m., Bruss arrived at approximately 7:23:16 p.m., and Schultz arrived at approximately 7:25:25 p.m.
[20] Exhibit 1 at approximately 19:24:33.
[21] *Id.* at approximately 19:24:33.



31.     Mr. Thomas was careful not to make any sudden movements for fear that Defendants would shoot him. He did nothing that could be credibly construed as threatening. Mr. Thomas gave no indication, verbal or nonverbal, that he intended to flee or resist arrest.

32.     Defendant Johnson nonetheless continued to rile up his panting dog, yanking the dog's leash and cursing at it.[22]



33.     Defendant Johnson ordered his attack dog at least four times to "Watch 'em!" and "Watch 'em, boy!" even as Mr. Thomas lay prone with his hands outstretched.[23]

34.     Defendant Johnson cursed at Mr. Thomas: "Put your fucking hands out to your sides, now!" "Fucking do it, fucking try me!" and "Try me, motherfucker!"[24]

35.     Mr. Thomas and Mr. Gray remained prone on the ground with their hands outstretched and empty.[25]

---

[22] Exhibit 1 at approximately 19:23:52, 19:25:35, 19:26:41.
[23] *Id.* at approximately 19:25:10.
[24] *Id.* at approximately 19:25:33.
[25] *Id.*

36.     Defendant Johnson then directed Defendant Bruss to take Mr. Gray into custody.[26] Defendant Bruss commanded Mr. Gray to stand up, face away from him, and walk backwards towards him.[27] Mr. Gray did as he was told and another officer handcuffed him.[28]

37.     Defendant Schultz then ordered Mr. Thomas to "step up," and "do it now."[29] Defendant Schultz addressed Mr. Thomas as "you in the gray," referring to the color of Mr. Thomas's shirt.[30]

38.     Given that Mr. Thomas had, until that point, been receiving orders primarily from Defendant Johnson, it took him a few seconds to register that this command was directed at him. During those few seconds, he stayed prone on the ground, with his arms remaining outstretched and still.

39.     Defendant Johnson then joined in Defendant Schultz's commands, shouting, "This is your last chance or I'm going to send the dog after you."[31] Upon hearing Defendant Johnson's voice, Mr. Thomas lifted his head from the ground.[32]

40.     Defendant Johnson unleashed his attack dog.[33]

---

[26] Exhibit 1 at approximately 19:25:53.
[27] *Id.* at approximately 19:25:58.
[28] *Id.* at approximately 19:26:34.
[29] *Id.* at approximately 19:27:03.
[30] *Id.* at approximately 19:27:03.
[31] *Id.* at approximately 19:27:09.
[32] *Id.* at approximately 19:27:19.
[33] *Id.* at approximately 19:27:23.



41.     Defendant Johnson's dog charged Mr. Thomas and lunged at him. It locked its jaws on Mr. Thomas's right arm, embedding its teeth deep into his flesh and shaking it from side to side, as Mr. Thomas cried out in pain.[34]

---

[34] Exhibit 1 at approximately 19:27:25.



42.     Defendant Johnson walked over to Mr. Thomas and continued to taunt him, stating, "You think we're fucking around, don't you?"[35] He made no effort to restrain his dog.

43.     Meanwhile, Defendant Schultz stood steps away with his gun aimed on Mr. Thomas, who was still in the dog's jaws, writhing in pain.

---

[35] Exhibit 1 at approximately 19:27:27.



44.    Defendant Bruss, just a few feet away, also watched while Defendant Johnson permitted the dog attack to continue.

**B.  Defendants Unnecessarily Prolonged the Dog Attack.**

45.    Despite the fact that Mr. Thomas had at no point given any indication he might flee or threaten any officer's safety, Defendant Johnson did not order the dog to release its bite. Instead, Defendant Johnson climbed on top of Mr. Thomas as the dog continued to bite down on his arm, pulling and tearing at his flesh.[36]

---

[36] Exhibit 1 beginning at approximately 19:27:30.



46.     All the while, Mr. Thomas remained as still as possible. He put his hands behind his back as directed so that Defendant Johnson could handcuff him.

47.     After approximately 43 seconds, Defendant Johnson finally began to remove the dog from Mr. Thomas's mangled arm.[37]  Even so, he allowed the dog to lunge at Mr. Thomas and latch onto his pant leg before pulling the dog off him for good.[38]

---

[37] Exhibit 1 at approximately 19:28:06.
[38] *Id.* at approximately 19:28:13.



48.     Defendant Bruss commanded Mr. Thomas to roll over onto his stomach.[39] Mr. Thomas

complied. Defendant Johnson then threatened Mr. Thomas: "You ain't seen nothing yet."[40]

49.     Defendant Johnson celebrated the attack, laughing and cheering.[41] He later joked with a

fellow officer that his dog was now "full" and "satisfied."

50.     Neither Mr. Thomas nor Mr. Gray possessed any weapons or objects that could be mistaken

for weapons. No officer ever claimed to have seen a weapon in any of their hands.

51.     Defendants Bruss and Schultz knew that Defendant Johnson's use of force was excessive

and unreasonable. Yet neither Defendant Bruss nor Defendant Schultz made any verbal or physical

---

[39] Exhibit 1 at approximately 19:28:15.
[40] *Id.* at approximately 19:28:16.
[41] *Id.* at approximately 19:28:20.

attempt to restrain Defendant Johnson or his attack dog.[42] On the contrary, they assisted Defendant Johnson by pointing their guns at Mr. Thomas, taunting him, and levying threats of their own.

**C. Defendants Made Multiple Misleading Statements to Cover Up Their Illegal Attack.**

52.    After the attack, Defendants made several self-serving, false and misleading statements about their decision to unleash Defendant Johnson's attack dog on Mr. Thomas.

53.    For instance, Defendant Bruss later stated that he "asked communications if it was the reportee or the suspects with the gun" and that communications "indicated it was the suspects that were armed." Similarly, in a written report, Defendant Johnson stated, "While responding to the location, dispatch advised the suspects also had firearms. . . . Dispatch advised the suspects had the firearms and were inside of a maroon Chrysler."

54.    However, dispatch specifically stated—more than once—that it was the *reporter*, not the suspects, who was armed.[43] Defendants Johnson and Bruss were aware of this fact. Defendant Johnson even confirmed it over the radio while communicating with dispatch before any officers arrived at the location.[44]  Yet neither made any mention of that fact in their written reports.

55.    Likewise, Defendant Schultz lied to an Assistant District Attorney while urging him to charge Mr. Thomas with interference. Defendant Schultz stated to the ADA that Mr. Thomas was not compliant and looked like he was going to run.

56.    Yet, in reality, Mr. Thomas barely moved throughout the entire encounter, except to comply with Defendants' orders to lay down on the ground. At no point did Mr. Thomas give any

---

[42] Defendant Bruss was also a trained attack dog handler.
https://m.facebook.com/Precinct1Constable/posts/2174105712665731/.

[43] Even if dispatch *had* misinformed Defendants that Mr. Thomas was armed, it would not justify siccing an attack dog on a person who lay prostrate on the ground, with his hands outstretched and empty.

[44] Exhibit 1 at approximately 19:20:46.

indication that he was going to run, let alone in the minutes before the dog attack, when he lay prone and motionless on the ground with arms outstretched.[45]

57.    In another example, Defendant Johnson later told Sergeant James Moncrief that Mr. Thomas was "not complying at all."

58.    But Mr. Thomas did follow orders and even sought clarification from Defendants about which orders they were directing at him versus his friend.[46]

59.    Mr. Thomas made no attempt to flee, fight, or resist. Indeed, Mr. Thomas was laying prone on the ground with his hands outstretched when Defendant Johnson unleashed his attack dog on him.

### D. Defendants' Excessive Use of Force Caused Mr. Thomas to Suffer Ongoing Serious Physical, Mental, and Emotional Injuries.

60.    Defendants' conduct led Mr. Thomas to suffer severe and continuing harm, including, but not limited to, medical expenses, lost earnings, loss of future earning capacity, physical pain and suffering, temporary and permanent physical and emotional impairments, mental anguish and emotional distress, fear, humiliation, and loss of enjoyment of life.

61.    Mr. Thomas suffered excruciating pain from the dog attack. He was in such agony that he believed his arm had been torn off. He had to be repeatedly assured by medical personnel that his arm remained attached to his body.

---

[45] Exhibit 1 at approximately 19:24:45.
[46] *Supra* ¶ 30.



62.     Defendants needlessly aggravated Mr. Thomas's pain by tightly handcuffing him with his hands behind his back for approximately thirty minutes after the attack, in such a position that medical personnel struggled to transport him from the ground to an ambulance and attend to his urgent medical needs.

63.     Only after medical personnel alerted Defendant Bruss that they could not check Mr. Thomas's vitals with his hands cuffed behind his back did Bruss authorize adjusting the handcuffs so that Mr. Thomas could keep his arms in front of him.

64.     At the time of the attack, Mr. Thomas was wearing a basketball jersey that carried great sentimental value to him. His nephew had given it to him as a gift. After the attack, not only was the jersey soaked in Mr. Thomas's blood and shredded by the dog's teeth, but it also had to be cut from his body so that medical personnel could tend to his wounds. It was destroyed.

65.     Mr. Thomas suffered severe physical injuries, including lacerations, puncture wounds, permanent scarring, persistent muscle damage, and other impairments to his right arm.

66.     After the attack, Mr. Thomas was unable to provide for his three daughters. As a right-handed person, the injuries handicapped Mr. Thomas's use of his dominant arm. He tried returning to construction work, but his injuries were too much of a barrier.

67.     Because of the attack, Mr. Thomas also suffered severe emotional distress that has had a lasting psychological impact.

68.     Mr. Thomas continues to suffer severe emotional consequences. Two years later, he is still tormented by nightmares about Defendant Johnson and the attack dog. He experiences heightened levels of anxiety, depression, and post-traumatic stress.

69.     Mr. Thomas now lives in fear of the police, knowing that at any moment, he could encounter another officer like Johnson, Bruss, or Schultz, and that, if he does, there is nothing he can do to save himself from being held at gunpoint, brutalized, and perhaps even killed.

## CLAIMS FOR RELIEF

### A.  Count One: Defendant Johnson Violated Mr. Thomas's Constitutional Rights by Subjecting Him to Excessive and Unreasonable Force in Violation of the Fourth and Fourteenth Amendments.

70.     Mr. Thomas incorporates by reference all preceding allegations as if fully set forth herein.

71.     By holding a prostrate Mr. Thomas at gunpoint, unleashing his highly agitated attack dog on Mr. Thomas, and directing the dog to attack Mr. Thomas as he lay prone on the ground,

Defendant Johnson violated Mr. Thomas's Fourth Amendment right to be free from excessive force, as incorporated to the states through the Fourteenth Amendment.

72.     No reasonable officer could conclude that Defendant Johnson's level of force was necessary where Mr. Thomas was unarmed; compliant with orders; had his hands outstretched and visible throughout the entire encounter; made no sudden movements; and made no attempt to flee, resist arrest, or harm Defendant Johnson or any other person.

73.     Moreover, Defendant Johnson violated Mr. Thomas's Fourth Amendment right to be free from excessive force by permitting the attack dog to continue biting Mr. Thomas while he remained on the ground, as well as by neglecting to remove the dog and stop it from mauling him for approximately 43 seconds.

**B. Count Two: Defendant Bruss Violated Mr. Thomas's Constitutional Rights by Subjecting Him to Excessive and Unreasonable Force in Violation of the Fourth and Fourteenth Amendments.**

74.     Mr. Thomas incorporates by reference all preceding allegations as if fully set forth herein.

75.     By failing to protect Mr. Thomas from Defendant Johnson's unconstitutionally excessive use of force, despite being physically present, aware of Defendant Johnson's constitutional violations, and having ample opportunity to intervene, Defendant Bruss violated Mr. Thomas's right to be free from unconstitutionally excessive force.

76.     Not only did Defendant Bruss refuse to take reasonable measures to intervene, he also acquiesced in and ratified Defendant Johnson's excessive use of force both before and after Defendant Johnson unleashed the attack dog by, *inter alia*, standing steps away and watching while Defendant Johnson unnecessarily prolonged the attack and lying to cover up his and his fellow officers' illegal conduct.

**C. Count Three: Defendant Schultz Violated Mr. Thomas's Constitutional Rights by Subjecting Him to Excessive and Unreasonable Force in Violation of the Fourth and Fourteenth Amendments.**

77.     Mr. Thomas incorporates by reference all preceding allegations as if fully set forth herein.

78.     By failing to protect Mr. Thomas from Defendant Johnson's unconstitutionally excessive use of force, despite being physically present, aware of Defendant Johnson's constitutional violations, and having ample opportunity to intervene, Defendant Schultz violated Mr. Thomas's right to be free from unconstitutionally excessive force.

79.     Not only did Defendant Schultz refuse to take reasonable measures to intervene, he also acquiesced in and ratified Defendant Johnson's unconstitutionally excessive use of force both before and after Johnson unleashed the attack dog by, *inter alia*, holding Mr. Thomas at gunpoint, standing steps away and watching while Defendant Johnson unnecessarily prolonged the attack, and lying to cover up his and his fellow officers' illegal conduct.

**REQUEST FOR RELIEF**

80.     Defendants' flagrant disregard for Mr. Thomas's constitutional rights—and indeed, his humanity—subjected Mr. Thomas to agonizing pain, fear, severe and ongoing physical and emotional injuries, and material costs. Mr. Thomas now asks the Court to enter a judgment confirming that Defendants are not above the laws they enforce.

81.     WHEREFORE, on the basis of the foregoing, Mr. Thomas demands a jury trial for all issues so triable pursuant to the Seventh Amendment of the United States Constitution and Federal Rules of Civil Procedure, and requests that this Court issue the following relief:

      a.  Declare that Defendants violated Mr. Thomas's constitutional rights;

      b.  Award compensatory damages against Defendants in an amount to be determined by a jury at trial;

    c.   Award punitive damages against Defendants for their willful and egregious violations of the law in an amount to be determined by a jury at trial;

    d.   Award reasonable attorneys' fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law; and

    e.   Award such other relief as the Court deems just and proper.

Respectfully submitted this 22nd day of February, 2023,

_Jeffrey Stein_
_____
Shirley LaVarco (*pro hac vice* forthcoming)*
shirley@civilrightscorps.org
Brittany Francis (*pro hac vice* forthcoming)†
brittany@civilrightscorps.org
Jeffrey D. Stein (Texas Bar No. 24124197; S.D. Tex. Bar No. 3600520)‡
jeff@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Telephone: (202) 844-4975
* Admitted to practice in the District of Columbia (Bar No. 90005167).
† Admitted to practice in New York (Bar No. 5337555) and the District of Columbia (Newly Admitted and Awaiting Bar No.).
‡ Attorney-in-Charge.