# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| KERRY LEE THOMAS, | |
| Plaintiff, | |
| v. | Case No. 4:23-cv-00662 |
| ERIC M. BRUSS, WAYNE SCHULTZ, and KEITH MORRIS, in his capacity as Temporary Dependent Administrator of the Estate of Robert Johnson, | |
| Defendants. | |

**PLAINTIFF KERRY LEE THOMAS'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION, IMPOSE SANCTIONS, AND AWARD ATTORNEYS' FEES**

## **<u>Table of Contents.</u>**

I.    Defendants Failed to Rebut or Deny Many of Plaintiff's Contentions About Their Discovery Misconduct. .................................................................................................................. 3

II.    Defendants Flout the Federal Rules of Civil Procedure By Presenting An Alleged Rule 11 Violation to the Court Without First Complying With the Safe Harbor Provision of Rule 11(c)(2). 4

III.    Defendants Continue To Claim There Was No Internal Affairs Investigation Into The Misconduct Alleged In Plaintiff's Complaint, While Refusing To Contend With the Evidence Plaintiff Has Presented to the Contrary. ..................................................................................... 5

IV.    Defendants Misstate The Facts About Plaintiff's Requests for Defendants' Disciplinary Records. ................................................................................................................................ 7

V.   Defendants Arguments About RFP No. 25—For Records Concerning the Payment of Defendants' Legal Fees, Costs, Settlement Amounts, Jury Awards, and Any Other Expenses—Are Irresponsible and Disingenuous. ................................................................................................. 11

VI.    Defendants Falsely Claim to Have Produced All Responsive Emails, Text Messages, and Phone Records—Despite Their Own Sworn Testimony Establishing Otherwise. ...................... 14

VII.    Defendants Raise Belated and Brand New Complaints About Plaintiff's Discovery Responses In A Transparent Attempt to Distract from Their Own Misconduct. ........................ 15

VIII.   Defense Counsel Denies Defendant Schultz Deleted Text Messages About This Case, Despite His Sworn Testimony to the Contrary, And Denies Defendants Had An Obligation to Preserve Evidence. .................................................................................................................. 17

IX.    Given Defendants' Failures to Produce Responsive Text Messages and Defendant Schultz's Admission That He Intentionally "Got Rid Of" At Least Some of Them, a Forensic Search of Defendants' Cell Phones Is Warranted. .................................................................................... 19

X.   Defendants Gloss Over Their Failure to Produce Records Pertaining to "K-9 Jeck," The Attack Dog Sicced On Plaintiff. ............................................................................................... 20

XI.    Conclusion. .................................................................................................................... 22

I.     **Defendants Failed to Rebut or Deny Many of Plaintiff's Contentions About Their Discovery Misconduct.**

In their Opposition, Defendants fail to acknowledge or respond to a majority of the evidence Plaintiff has presented of their obstructionist discovery conduct. As such, the following allegations should be deemed admitted:

a.   Defendants have a contractual right and practical ability to access Harris County records that are responsive to Plaintiff's discovery requests. Motion to Compel, ECF No. 49 at 8–9. At most, Defendants have articulated that it is an inconvenience to procure and produce them. *Id.*; Defendants' Opposition, ECF No. 59 at 11.

b.   Defendants failed to implement a litigation hold after Plaintiff filed this lawsuit, even after Plaintiff's Counsel and the Court expressly put them on notice of their duty to preserve evidence. Motion to Compel, ECF No. 49 at 24. Plaintiff's Supplemental Memorandum, ECF No. 58 at 10.

c.   Defendants failed to conduct a diligent search for responsive emails and, as a result, failed to produce numerous emails, including those directly pertaining to Plaintiff's allegations as well as to Precinct 1 guidance on the duty to intervene. *Id.* at 15–16.

d.   Defendant Bruss failed to disclose responsive posts he made in Facebook groups about police K-9s, drawing on his approximately 14 years of experience as a K-9 handler. *Id.* at 13 n. 21. He uses those Facebook groups to offer guidance to other law enforcement officers on the acquisition and use of police K-9s; share case law relevant to the use of K-9s; and celebrate his K-9 apprehension "successes." *Id.* at 6, 13–14.

e.   Defendant Bruss sometimes uses WhatsApp groups to communicate with fellow deputies about ongoing investigations at Precinct 1. *Id.* at 14–15. If there were WhatsApp messages

responsive to Plaintiff's discovery requests, they have been spoliated because Bruss's

fellow officers made use of WhatsApp's "disappearing messages" settings. *Id.* at 14–15.

f.   Defense Counsel improperly influenced Defendant Schultz's deposition testimony about

why he changed his phone number. This testimony came two weeks after Defendant Bruss

testified he purchased a second phone to avoid "all the drama" of this litigation. *Id.* at 11.

g.   Instead of producing all communications responsive to Plaintiff's discovery requests,

Defendants improperly narrowed their search and production efforts to focus solely on

communications between Defendants. *Id.* at 24–25.

h.   Documents concerning Defendant Schultz's "written disciplinary violation" for violating

policy "following a pursuit" have not been produced, and are responsive to Plaintiff's

discovery requests. Motion to Compel, ECF No. 49 at 18.

i.   The Harris County Attorneys' Office negotiates settlement agreements on behalf of

individual officers sued for misconduct and draws on County funds to pay those

settlements. Plaintiff's Supplemental Memorandum, ECF No. 58 at 17–18.

Fed. R. Civ. P. 8(b)(6) (providing that an allegation other than the amount of damages is admitted

if a responsive pleading is required and the allegation is not denied). *See, e.g.*, *Teirstein v. AGA

Med. Corp.*, No. 6:08-CV-14, 2009 WL 704138 at *8 (E.D. Tex. Mar. 16, 2009).


## II.   Defendants Flout the Federal Rules of Civil Procedure By Presenting An Alleged Rule 11 Violation to the Court Without First Complying With the Safe Harbor Provision of Rule 11(c)(2).[1]

Rule 11(c)(2) of the Federal Rules of Civil Procedure admonishes a party alleging a Rule

11(b) violation that a sanctions motion pursuant thereto "must not be filed or be presented to the

---

[1] Plaintiff's Counsel acknowledges that Plaintiff's Motion to Compel and Supplemental Memorandum in Support were both overlength, as Defense Counsel points out. Plaintiff's Counsel

court" until 21 days *after* the motion has been served on the party against whom the violation is alleged. Fed. R. Civ. P. 11. Defense Counsel openly disregards that requirement by presenting an alleged Rule 11(b) violation to the Court in a public filing, without first serving a motion on Plaintiff's Counsel—let alone conferring with Plaintiff's Counsel about the alleged violation.[2] This is a transparent attempt to distract from the merits of Plaintiff's arguments about Defendants' discovery misconduct and should not be rewarded.

III. **Defendants Continue To Claim There Was No Internal Affairs Investigation Into The Misconduct Alleged In Plaintiff's Complaint, While Refusing To Contend With the Evidence Plaintiff Has Presented to the Contrary.**

Plaintiff has repeatedly called the Court's attention to material statements by Jeff McShan, a spokesperson for Precinct 1 and other Harris County entities. McShan told the Houston Chronicle that Precinct 1 was "launching an investigation" shortly after Plaintiff filed this lawsuit on February 22, 2023.[3] McShan's statement is supported by an "Audit Report" Defendants produced, showing that Eric Greenwood, an internal affairs investigator for Precinct 1, downloaded "internal cop[ies]" of the use of force reports on March 1, 2023.[4] On or about July 26, 2023, McsShan then told a Houston Chronicle reporter that the internal investigation was completed and the officers

---

sincerely apologizes for this oversight. If the Court so wishes, Plaintiff will refile his pleadings to comply with the Court's page limits, or file a motion requesting leave to file an overlength brief.

[2] Defendants' Response to Plaintiff's Motion to Compel & Motion for a Protective Order, ECF No. 59 ("Defendants' Opposition") at 1–3 ("Rather than filing a separate motion and request for sanctions as required by FRCP 11(c)(2), Defendants request that the Court admonish Plaintiff regarding making unwarranted contentions and false allegations in his pleadings.") *See Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (explaining that the "plain language" of Rule 11 imposes a "mandatory" safe harbor provision).

[3] Jonathan Limehouse, *Bodycam footage shows Harris County deputy releasing police dog on unarmed Black man in 2021*, Houston Chronicle, Updated Mar. 14, 2023, https://www.houstonchronicle.com/news/houston-texas/crime/article/harris-county-police-dog-attack-unarmed-black-man-17801902.php.

[4] Pl.'s Supplemental Memorandum, ECF No. 8 at 8 (citing Audit Spreadsheets, ECF No. 58-2).

were cleared of any wrongdoing.[5] Two weeks later, on August 7, 2023, Greenwood called Defendant Bruss with a question about the incident underlying this case and noting that he was having trouble locating a related report.[6]

**Despite McShan's statements and Greenwood's inquiries, Defendants have not produced any investigation notes or factual findings by IAD.** Instead, Defense Counsel continues to insist that there was no investigation, and attempts to side step the evidence to the contrary. Defendants' Opposition, ECF No. 59 at 4. In her Opposition, counsel misrepresents her own client's testimony as an outright denial that any investigation took place. *Id.* at 4–5. In reality, Defendant Bruss testified that he was "never informed" that Defendants were under investigation. Bruss Bruss Dep. Tr., ECF No. 58-6 at 284. However, he acknowledged he saw McShan's statements to the media that Defendants had been "cleared of any wrongdoing" following an investigation. *Id.* at 283. Defendant Bruss also testified that he spoke with IAD Investigator Greenwood about the underlying incident, though he said the scope of that conversation was limited to the identity of the driver on the scene. *Id.* at 282–83.

Defense Counsel again points to Assistant Chief Deputy Carl Shaw's declaration as though it can wave away these discrepancies. **Unfortunately, the Shaw Declaration fails to contend with the conflicting evidence.** Shaw asserted that there was no internal affairs investigation, but

---

[5] Email from Jonathan Limehouse to Shirley LaVarco, July 26, 2023, ECF No. 59-2 at 7 (relaying that "the PIO for the precinct [said] that their internal investigation has been completed and they determined no wrongdoing was committed by the officers" and asking for comment from Plaintiff's counsel); Jesus Vidales, *Houston SPCA hosts annual critter camp, where kids learn about dogs with jobs*, Houston Chronicle, Updated July 26, 2023, https://www.houstonchronicle.com/news/houston-texas/article/houston-kids-meet-dogs-learn-careers-animals-camp-18209265.php ("Harris County Precinct 1 spokesman Jeff McShan said Bruss and the other officers were cleared of any wrongdoing after an investigation").

[6] Summer 2023 Texts, ECF No. 58-3 at 9 ("Greenwood from I/A called me yesterday about that case asking if I knew the name of the other guy arrested, I told him I didn't, he said they never filed a complaint so he didn't have it and said he was having trouble pulling up the report. So not sure what that was about. He didn't sound like it was an issue but I have no clue.").

made no mention of McShan's statements to the contrary, nor of IAD Investigator Greenwood's inquiries into the underlying incident. *See* Shaw Decl. 49-17 at 2. In their Opposition, Defendants claim that Plaintiff's Counsel has deemed Shaw's and Bruss's statements untruthful.[7] This misrepresents Plaintiff's arguments. Plaintiff's Counsel can infer a few different possibilities given the conflicting evidence: (1) McShan lied to the media and the public about an internal affairs investigation that never happened; (2) the post-lawsuit "investigation" McShan referred to consisted of nothing more than Greenwood reviewing the use of force report and making a single phone call to Eric Bruss, with <u>no file notes or factual findings</u>; or (3) additional records of an internal affairs investigation exist but have not been produced. Plaintiff must rely on discovery to uncover the truth.

## IV.  Defendants Misstate The Facts About Plaintiff's Requests for Defendants' Disciplinary Records.

In their Opposition, Defendants attempt to muddy Plaintiff's requests for disciplinary and misconduct records, claiming Plaintiff accused Defendants of making  "'verifiably false and/or misleading statements' with respect to RFP Nos. 11 and 29" due to Defendants' failure to produce an internal affairs report related to Defendant Schultz's possession of a GPS blocking device." ECF No. 59 at 6. This is untrue. **Plaintiff never argued the GPS blocker records were responsive to RFP Nos. 11 and 29.[8] Plaintiff stated that the GPS blocker records were responsive to RFP Nos. 21 and 23.** *See* Plaintiff's Motion to ECF No. 49 at 17 ("Through media

---

[7] ECF No. 59 at 4 ("According to Plaintiff, Defendants' discovery responses and testimony that there was no investigation into their conduct related to this incident is untruthful. This must also be true for the Assistant Chief Deputy who provided an affidavit stating the same thing Defendants have stated over and over again.").

[8] Plaintiff's arguments about RFP Nos. 11 and 29 were tied to Defendants' failure to produce records of the contested investigation into the K-9 attack on Plaintiff—not the records pertaining to Schultz's GPS blocker ("the GPS blocker records").

reports, Plaintiff's Counsel learned that Defendant Schultz resigned following a substantiated internal affairs investigation, related to an illegal GPS blocking device he kept in his patrol car. Records of the GPS blocker investigation were indisputably responsive to RFP Nos. 21 and 23, but Defendants' Counsel repeatedly failed to produce them, or even to indicate that any responsive records were being withheld.").

RFP No. 21, served on September 18, 2023, was for: "All complaints of misconduct concerning Defendant(s), formal or informal, made to any entity responsible or previously responsible for investigating, monitoring, or responding to alleged misconduct by Defendant(s) in their capacities as law enforcement officers." Pl.'s RFPs, ECF No. 49-2. RFP No. 22 requested records of any investigation leading to "any substantiated claims of misconduct." *Id.* **By Defendant Schultz's own admission, he withheld the GPS blocker records until February 22, 2024—four months after his discovery responses were due.** Defendants' Opposition, ECF No. 49, at 6. Those records indisputably concern a substantiated complaint that Schultz violated Precinct policy and federal law by possessing a device capable of shielding his location from oversight by his superiors. They are thus responsive to Plaintiff's requests for "complaints of misconduct" and the investigation records for "substantiated complaints of misconduct." Pl.'s RFPs, ECF No. 49-2 at RFP Nos. 21, 23.

Defendants minimize the prejudice to Plaintiff in their Opposition by falsely suggesting that Plaintiff had the GPS blocker records all along. ECF No. 59 at 6 ("Plaintiff's counsel was quoted in the original article about Schultz's possession of the GPS device and was fully aware of the incident.").[9] As Defendants well know, the news coverage of the GPS blocker controversy

---

[9] Defendants Counsel repeatedly chastises Plaintiff for speaking with the media about Defendants and this case but, as evidenced in Defendants' own exhibit, Plaintiff's Counsel did not solicit the media about the GPS blocker controversy or Defendant Schultz's resulting resignation. She simply responded when the media asked for comment, to call attention to a matter of serious public

contains far less detail than the records from the underlying investigation. Were that not the case, Defendants would not have marked the investigation files as confidential when they finally produced them—five months after Plaintiff first requested them. This belated disclosure, only after a specific follow-up request from Plaintiff, is characteristic of Defendants' overall approach to discovery in this case, and it is not the only set of misconduct records Defendants have withheld.

It is deeply concerning to Plaintiff's Counsel that Defendants have by and large failed to produce responsive records until Plaintiff independently learned of their existence. This suggests, at best, a lack of diligent search efforts on the part of Defendants and/or their Counsel. Thus, even if Plaintiff could not definitively prove that additional responsive records exist, an order to conduct a diligent search would be warranted. Nonetheless, Plaintiff has presented evidence of yet another substantiated complaint of misconduct against Schultz for which he failed to produce records. Motion to Compel, ECF No. 49 at 18 ("[I]n Schultz's employment application to Precinct 1, he disclosed that he received a 'written disciplinary violation' while employed with Precinct 4 for violating policy 'following a pursuit.'"). Defendants do not deny or even address this incident in their Opposition. Without the underlying records or even a statement that they are not responsive, Plaintiff cannot know whether this "policy violation" pertained to, for example, the improper use of force during an apprehension like the one at issue.

**Defendants claim that they made responsive records available for inspection–this is also disingenuous and misleading.** *Id.* at 6 ("Because the parties had not filed the agreed protective

---

concern: The phenomenon of law enforcement officers leaving one agency after substantiated complaints of misconduct, only to rebound with another agency. This is the very same issue that plagued Precinct 1 when it decided to hire Robert Johnson. Johnson was fired from the Harris County Sheriff's office for sexual misconduct, only to later use his position at the Constable's Office to commit violence against people like Mr. Thomas and to sexually abuse children. *See* Jessica Wiley, Deputy's Dying Confession Leads to Child
Sex Crime Charges Against 2 Colleagues, ABC 13, May 24, 2021, https://abc13.com/deputy-suicide-harris-county-precinct-1-sgt-accused-of-sex-assault-child-abuse-allegations/10673478/.

order at that time and because counsel for Plaintiff was continuously reaching out to the media regarding this case, a copy was not provided to Plaintiff but was made available to Plaintiff instead. . . . Plaintiff never reached out to inspect the documents.") (citation omitted). Defendants are quoting from their October 18, 2023, discovery responses, which stated confidential documents would be made available for inspection, but are omitting their amended responses from October 27, 2023, which made no mention of documents "made available for inspection" and which objected to the disclosure of the very documents Defendants' claimed to have made available, without indicating whether responsive documents were being withheld. *See* Motion to Compel, ECF No. 49 at 17; Defs.' Oct. 27 Resps., ECF No. 49-4 at 6–7, 15.

Moreover, Defense Counsel's October 18, 2023, email to Plaintiff's Counsel expressly stated: "Until we agree on a protective order, I cannot produce a bulk of the responsive documents. The documents that do not contain sensitive and confidential information are contained in the attached folder." Correspondence Re Protective Order, Exhibit i, ECF No. 60-1 at 3. The Parties' filed the agreed protective order on October 24, 2023. Joint Motion for Entry of Agreed Protective Order, ECF No. 33. Two days later, Plaintiff's Counsel sent Defense Counsel the following email:

> Now that the agreed protective order has been filed, would you commit to producing the remaining documents by EOD today, so that there is sufficient time to review them in advance of Defendants' depositions? As you know, we are based on the east coast and traveling to Houston to review them would be unduly burdensome, especially with trial set in April.

Correspondence Re Protective Order, Exhibit i, ECF No.60-1 at 2. Defense Counsel followed up by phone, acknowledged that the "available for inspection" language was a placeholder until the Parties had agreed on a protective order, and served amended responses the next day, with no

indication that records responsive to RFP Nos. 21 and 23 were being withheld. *See id.*; ECF No. 49-4 at 6–7, 15.

Finally, Defendants attempt to shift their discovery burden to Plaintiff by referencing his subpoenas to third parties and public records requests. **The fact that Plaintiff has vigorously investigated his case does not relieve Defendants of their discovery obligations.** Moreover, Plaintiff began subpoenaing third parties only after Defendants repeatedly failed to produce responsive records. Unfortunately, those third parties have largely refused to furnish the requested records as well. Plaintiff thus seeks information about Defendants' disciplinary history from the person(s) who are best positioned to procure it—Defendants themselves.

V.   **Defendants Arguments About RFP No. 25—For Records Concerning the Payment of Defendants' Legal Fees, Costs, Settlement Amounts, Jury Awards, and Any Other Expenses—Are Irresponsible and Disingenuous.**

When confronted with Defendants' improper withholding of records responsive to RFP No. 25, **Defense Counsel again claims—without merit—that RFP No. 25 was limited to indemnification agreements. Defendants' Opposition at 7. This is untrue.** The plain language of RFP No. 25 is unambiguous: "All documents related to . . . potential payment of legal fees, costs, settlement payments, jury awards, and/or other payments associated with this lawsuit . . . ." Pl.'s RFPs, ECF No. 49-2 at 10. Defense Counsel's contract with Harris County indisputably falls within its purview, as it concerns both the potential payment of a settlement award to be approved by the Harris County Commissioner's Court, as well as the payment of up to $50,000 to cover the cost of Defendants' legal representation, with the possibility of supplemental allocations. Motion to Compel, ECF No. 49 at 21 (citing Vinson Contract, ECF No. 49-1 at 2). Despite this plain language, Defendants argue that it was "not unreasonable for Defendants' counsel to interpret Plaintiff's request" as limited to indemnification agreements. Defendants' Opposition, ECF No. 59 at 7. On the contrary, it was patently unreasonable in light of the plain language of the request

itself, Plaintiff's follow-up email inquiries, and a formal deficiency letter in which Plaintiff's

Counsel provided examples of the kinds of records that would be responsive to RFP No. 25:

"Examples of records responsive to this request might include:

- Insurance policies held individually by Bruss and/or Schultz

- Insurance policies held by Harris County or its law enforcement agencies

- Emails, text messages, or other communications between Defendants and their employers discussing whether the County will pay a judgment or settlement award on their behalf

- Employment contracts referencing whether or not the County will pay a settlement or judgment on Defendants' behalf or provide for legal representation in the event that Defendants are sued for conduct in the scope of their employment.

- Emails, text messages, or other communications between Defendants and their fellow peace officers and/or any representative of a Union or labor organization discussing whether the County will pay a judgment or settlement award on their behalf

- Emails, text messages, or other communications between Defendants and the Harris County Attorney's Office discussing whether the County will provide for or subsidize Defendants' legal representation in this litigation.

The above list is offered only to aid in your search. It is not an exhaustive list of the types of records that are responsive to RFP No. 25." Correspondence Re RFP No. 25, ECF No. 49-7.

Even after receiving this detailed list, Defense Counsel failed to produce her contract with Harris

County until specifically ordered to do so by the Court. Motion to Compel, ECF No. 49 at 8.

Defendants also falsely claim that "as soon as counsel mentioned an agreement regarding

legal fees, Defendants' counsel provided the agreement." Defendants' Opposition, ECF No. 59 at

7. On the contrary, immediately after the Court directed Defense Counsel to provide the agreement,

Defense Counsel sent Plaintiff's Counsel an email accusing Plaintiff's Counsel of defrauding the

Court and maintaining that her contract is not responsive to RFP No. 25. Correspondence Re Vinson Contract, ECF No. 49-12.



When Plaintiff's Counsel again highlighted the relevant language for Defense Counsel, Defense Counsel maintained that her contract with the County was not responsive. *Id.*



Plaintiff's Counsel then asked whether Defense Counsel was unwilling to produce the contract in light of the apparent disagreement. *Id.* Defense Counsel did not respond, but had her legal assistant produce the contract shortly thereafter. *See id.*

The onus should not be on Plaintiff's Counsel to verbally reiterate each and every discovery request during a meet and confer or standalone email. Defense Counsel should do her due diligence

to read Plaintiff's discovery requests, negotiate with Plaintiff's Counsel as appropriate, search for responsive documents, and, at the very least, comply with this Court's direct orders.

**VI.   Defendants Falsely Claim to Have Produced All Responsive Emails, Text Messages, and Phone Records—Despite Their Own Sworn Testimony Establishing Otherwise.**

Defendants again claim in their Opposition to have produced all emails, text messages, and phone records in their possession. ECF No. 59 at 7–10.  This is untrue. Further, this argument is directly contradicted by Defendants' own deposition testimony. For example, Defendants have not produced: email guidance from Precinct leadership on the duty to intervene, emails from Chief Lofton Harrison notifying defendants of this lawsuit, and emails between Defendant Schultz and an assistant district attorney about the incident underlying this case. Plaintiff's Supplemental Memorandum, ECF No. 58 at 16. Defendants' failure to produce these emails suggests that they and/or their Counsel did not even bother to search their email inboxes for responsive communications and that such a search might turn up even more records than those Plaintiff's Counsel is aware of. Similarly, Defendant Schultz's testimony that he regularly deletes his text messages suggests that, even if he and his Counsel *wanted* to search his device for other communications responsive to Plaintiff's requests, they would not be able to—at least not without the forensic cell phone search Plaintiff has moved this Court to order. *See id.* at 5.

Moreover, Defendants failed to deny or rebut Plaintiff's allegations that: (1) Defendants improperly narrowed their search and production efforts to communications *between* Defendants; and (2) Defendants asserted an untimely and baseless claim of privilege to conceal responsive text messages from November 2023. Motion to Compel, ECF No. 49 at 24–26.

Furthermore, Defendants provide no support for their contention that: "A simple search on google would reveal that most phone companies do not store phone records for that long, and records that old are not available to account holders." *See* Defendants' Opposition, ECF No. 59 at

8. They then assert that "Plaintiff should be required to subpoena any phone records that Defendants are not in possession of." *Id.* at 10. **Plaintiff should not have to resort to time consuming and costly third party discovery to procure records that Defendants have the legal right or practical ability to obtain.** *See* Motion to Compel, ECF No. 49 at 8 (citing *Autery v. SmithKline Beecham Corp.*, 2010 WL 1489968, at *2 (W.D. La. 2010) ("Federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' of a party and subject to discovery . . . if the party has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a nonparty to the action.")).

## VII.  Defendants Raise Belated and Brand New Complaints About Plaintiff's Discovery Responses In A Transparent Attempt to Distract from Their Own Misconduct.

In their Opposition to Plaintiff's Motion to Compel, Defendants take issue with Plaintiff's objections to Schultz's RFP No. 41 for <u>the very first time</u>—seven months after Plaintiff first made them. ECF No. 59 at 7–8. Indeed, Defendants made no complaint about Plaintiff's October 2023 discovery responses at all until Plaintiff informed Defendants of his intent to schedule a pre-motion conference with the Court regarding *Defendants'* discovery deficiencies. Only then did Defendants send Plaintiff a deficiency letter, dated January 3, 2024. Correspondence Re Plaintiff's Discovery Responses, Exhibit ii, ECF No. 60-2. Notably absent from this deficiency letter was any mention of Schultz's RFP No. 41. Def.'s Deficiency Ltr., Exhibit iii, ECF No. 60-3. Plaintiff responded to these alleged deficiencies point-by-point in a detailed response letter within eight days, and promptly supplemented his productions in the interest of compromise. Exhibit ii, ECF No. 60-2; Pl.'s Resp. to Def.'s Deficiency Ltr., Exhibit iv, ECF No. 60-4. Plaintiff's response letter included the following courtesy request: "In the future, we urge you to raise any concerns about Plaintiff's discovery responses as you become aware of them, without undue delay." Exhibit iv, ECF No. 60-4. Defendants have apparently chosen not to honor that request. Plaintiff's Counsel also offered to

meet and confer if Defense Counsel had any remaining concerns about Plaintiff's discovery responses. Exhibit ii, ECF No. 60-2. Defense Counsel did not respond to this invitation. *See id.*

Defendants' reference to Schultz's RFP No. 41 is nothing more than a distraction. If Defendants' Counsel wished to litigate Plaintiff's Response to RFP No. 41, the proper procedure would be to first confer in good faith with Plaintiff's Counsel and, if unsuccessful, request a pre-motion conference with the Court. She has done neither. In any event, Defendants' arguments about parity are meritless. Plaintiff's September 18, 2023, Requests for Production included tailored requests for communications about this lawsuit, the underlying incident, the relationship between Defendants, and Defendants' relationships with Robert Johnson. Motion to Compel at 22 (discussing Plaintiff's RFP Nos. 4, 12, and 14). By contrast, Defendant Schultz asked Plaintiff to disclose <u>all</u> of his communications with any person, on any subject, since the date of the incident giving rise to this litigation, regardless of their relevance to this litigation. *See* Defendants' Opposition, ECF No. 59 at 8 (discussing Schultz's RFP No. 41).

Defendants seem to take issue with this Court's order to produce their phone records dating back to February 2021. *See id.* At 7–10. However, the Court only ordered them to do so after it became clear that Defendant Bruss spoke on the phone with an IAD investigator about this case while inexplicably denying the existence of related IAD records. Motion to Compel, ECF No. 49 at 26–27. There has been no similar factual dispute about relevant communications in Plaintiff's possession. Even if Defendants *had* turned over the full universe of phone records as directed by the Court, that disclosure would be far less invasive than the records requested in Schultz's RFP No. 41. Defendants phone records would reveal only who Defendants spoke or texted with and when; necessarily, they might also reveal the existence of responsive text messages that Defendants *should* have produced. However, these records would not reveal the content of

Defendants' communications. By contrast, Schultz's RFP No. 41 would have required Plaintiff to disclose the content of all of his communications from the time of the K-9 attack to the present, even those communications that have no bearing on this litigation.

**VIII.**    **Defense Counsel Denies Defendant Schultz Deleted Text Messages About This Case, Despite His Sworn Testimony to the Contrary, And Denies Defendants Had An Obligation to Preserve Evidence.**

Defense Counsel's attempt to wave away her client's admission that he deleted text messages about this case is unethical. Plaintiff's Counsel showed Defendants Schultz a series of screenshots from Defendant Bruss's phone, containing text messages between the two of them from July and August 2023. After authenticating the screenshots, Plaintiff's Counsel asked whether this was the first time Defendant Schultz and Defendant Bruss had texted. Schultz Dep. Tr., ECF No. 58-5 at 224. Schultz responded, "No. We had texted before." *Id.* Plaintiff's Counsel then asked whether the two had texted about this lawsuit before. *Id.* Schultz responded there "had been a little bit of back and forth" between him and Defendant Bruss about this lawsuit, "but not very much." Even "a little bit" of spoliated evidence is still spoliated evidence and Defense Counsel cannot simply wave it away. *Id.*

Defense Counsel also attempts to brush off Defendants' failure to preserve discoverable evidence by arguing that Plaintiff's preservation notice was principally addressed to Harris County rather than to Defendants. Defense Counsel was copied on the email containing the preservation notice and the notice itself identified Defense Counsel by name and address, as a secondary recipient. Preservation Notice & Accompanying Correspondence, ECF No. 58-4 at 2–4. Moreover, the preservation notice itself makes clear that when a party fails to preserve evidence, a court may impose sanctions. *Id.* at 2 n.2 (citing cases). This is certainly true when a party affirmatively destroys evidence, as Defendant Schultz has done. Plaintiff's Counsel should not have to educate Defense Counsel on attorneys' basic ethical duty to preserve evidence while litigation is pending.

Beyond Plaintiff's preservation notice, this Court issued a binding preservation notice in the ESI Order. Minute entry accompanying ECF No. 30, entering proposed order ECF 21-1. Defendants downplay this Court's order with claims that the Court never signed it. Defendants' Opposition, ECF No. 59 at 9. On the contrary, the Court entered the ESI Order on September 22, 2023. Minute entry accompanying ECF No. 30, entering proposed order ECF 21-1. Moreover, Defense Counsel now claims for the first time that she never consented to the ESI Order before it was entered. This is verifiably false. Defense Counsel affirmatively consented to the proposed ESI Order in writing on September 20, 2023. Exhibit v, ECF No. 60-5. Specifically, she agreed to a joint motion conspicuously titled "Consent Motion to Enter Consent Proposed Orders Re Scheduling & Production of ESI." *Id.* The joint motion begins with the following sentence: "Plaintiff Kerry Lee Thomas respectfully moves this Court to enter the proposed orders regarding scheduling (No. 29-1) <u>and the production of electronically stored information</u> (No. 21-1)." *Id.*; ECF No. 29. The Court entered both proposed orders two days later. Minute entry accompanying ECF No. 30. Defense Counsel never contested them.

Defense Counsel's claims that Plaintiff's Counsel took advantage of Defense Counsel being out of the country in July 2023 to file the proposed ESI Order are also verifiably false. *See* Defendants' Opposition, ECF No. 59 at 9. Defense Counsel and her designee, Linda Price, were responding to emails about other discovery issues while Defense Counsel was out of the country. July 2023 Correspondence Re ESI Order, Exhibit vi, ECF No. 60-6 at 2–3. Defense Counsel even requested changes to Plaintiff's proposed scheduling order on the same email thread wherein Plaintiff's Counsel repeatedly asked whether Defense Counsel had any revisions to the proposed ESI Order. *Id.* at 4. Plaintiff's Counsel informed Defense Counsel three times that if she does not have any revisions or objections to the proposed ESI Order, Plaintiff's Counsel would file it. *Id.*

at 1, 3, 6. Defense Counsel acknowledged the emails by responding to other matters addressed therein but made no objection to Plaintiff's proposed ESI Order. *See id.*

If Defense Counsel wished to contest the ESI Order, there were several more appropriate opportunities to do so, including: (1) when Plaintiff first filed it in July 2023; (2) when Plaintiff renewed his request that the Court enter the order in September 2023; (3) when Plaintiff sent Defense Counsel five deficiency letters discussing Defendants' failures to abide by the ESI Order; (4) during the Parties multiple meet and confers on discovery issues, including ESI; or (5) during the two discovery conferences the court held on ESI and other discovery issues in January and February of 2024. The appropriate time to raise this issue for the first time is not now, after Defendant Schultz has admitted to destroying evidence.

**IX.  Given Defendants' Failures to Produce Responsive Text Messages and Defendant Schultz's Admission That He Intentionally "Got Rid Of" At Least Some of Them, a Forensic Search of Defendants' Cell Phones Is Warranted.**

Plaintiff's Counsel would not ordinarily request a forensic search of Defendants' cell phones, but in this circumstance, believes it is warranted due to Defendants' discovery misconduct. Neither Defendant has produced any text messages from the night of the K-9 attack at issue, nor from the days or weeks that followed. Both have claimed they no longer have access to them. Defendants have also refused to produce their text messages from November 3, 2023, after first denying their existence and then asserting an untimely and baseless claim of privilege—which they do not now defend. Motion to Compel, ECF No. 49 at 25–26; *see* Defendants' Opposition, ECF No. 59. Defendant Schultz admitted to manually deleting text messages between him and Defendant Bruss about this case, including those from shortly after Plaintiff filed suit in February 2023. Plaintiff's Supplemental Memorandum, ECF No. 58 at 9. Defendant Bruss has not produced his copies of those messages either. Because Defendant Schultz admittedly deletes all of his text

messages on a regular basis,[10] and because Defense Counsel appears to have narrowed her discovery efforts to communications *between* Defendants,[11] Plaintiff's Counsel has good cause to believe that a forensic search of Defendants' cell phones would turn up responsive communications not only between Defendants, but also with third parties—including Robert Johnson, the officer who sicced a K-9 on Plaintiff and who is now deceased.

**X.     Defendants Gloss Over Their Failure to Produce Records Pertaining to "K-9 Jeck," The Attack Dog Sicced On Plaintiff.**

Defendants claim in their Opposition that they produced "hundreds of records related to Jeck including training records, veterinary records, and retirement records." ECF No. 59 at 10. Defendant Bruss knew that Jeck had been taken off the force just a month after Plaintiff filed this lawsuit, because the decision was made based on Bruss's written recommendation, in a letter to his supervisor James Moncrief. Motion to Compel, ECF No. 49 at 32. Plaintiff, however, had to learn of this material fact through a Google search, after Defendants repeatedly refused to turn over responsive records.[12] Defendants failed to produce this letter until four months after his discovery responses were due, and even then only after the Court specifically ordered him to do so. Motion to Compel, ECF No. 49 at 32.

Moreover, Defendants' claim that they produced any veterinary records is simply false. *See* Defendants' Opposition, ECF No. 59 at 10. Plaintiff was able to procure Jeck's veterinary records only through a subpoena to K9 Mission Rescue—the organization to which Defendant

---

[10] Plaintiff's Supplemental Memorandum, ECF No. 58 at 5.
[11] Motion to Compel, ECF No. 49 at 24.
[12] Plaintiff's Counsel's Internet searches turned up a Precinct 1 Facebook post celebrating Jeck's "retirement." ECF No. 49 at 31. Defendant Bruss was featured in a photo in this post, yet claims not to have had access to the retirement recommendation that he authored. *Id.*; Defendants' Opposition, ECF No. 59 at 11 ("Despite not being in possession of Jeck's records, Defendants produced responsive records in the possession of Harris County.").

Bruss himself recommended Jeck be "retired." Motion to Compel, ECF No. 49 at 32–33. Defendants themselves produced no veterinary records, despite evidence that they had access to them, including: (i) Defendant Bruss being listed as Jeck's veterinary contact, (ii) Defendant Bruss being a current Precinct 1 employee, (iii) email correspondence with James Moncrief and other Precinct 1 employees concerning Jeck's veterinary care, and (iv) Defendants contractual right to access County records. *Id.* at 32–33; 8–9.

Finally, Defendants deny any documentation of unprovoked aggression or other performance issues with K-9 Jeck. However, Plaintiff included evidence thereof in his motion. ECF No. 49 at 32 (displaying screenshot from veterinary records recounting that "Jeck recently bit handler in the arm while in his patrol car- did not seem to be any reason for it- just latched on.").[13] Similarly, Plaintiff's motion quotes from a letter Bruss authored, discussing "health issues" with K-9 Jeck that "has [sic] affected his performance" and recommending that he be retired from the force. *Id.* Nonetheless, Defendant Bruss did not turn over these records until February 2024— four months after Defendants' discovery responses were due.

Even still, Defendants have not turned over records of Jeck's acquisition by Precinct 1, despite the fact that Plaintiff has repeatedly requested them with great specificity and ample

---

[13] Plaintiff has cause to believe this may be a recurring issue among Precinct 1 K-9s. Defendant Schultz testified to multiple other instances in which dogs were out of control and bit their handlers or other law enforcement officers. This includes one instance in which a K-9 bit an officer's genital area and another instance in which a K-9 bit his handler's inner thigh, just missing her femoral artery. Schultz Dep. Tr., ECF No. 58-5 at 147–49. This suggests that Precinct 1's K9s are not sufficiently controllable to be used as weapons.

guidance on how to find them. *See* ECF No. 49 at 32. Defendants did not deny the existence of these records in their Opposition. *See* ECF No. 59.

## XI.   Conclusion.

WHEREFORE, for the reasons stated herein, as well as those stated in Plaintiff's to Compel Production and Memoranda in Support (ECF Nos. 49, 58), Plaintiff Kerry Lee Thomas respectfully requests that the Court issue an order compelling production, imposing sanctions, and awarding attorneys' fees, as set forth in Plaintiff's Amended Proposed Order, ECF No. 58-7.

Respectfully submitted this 17th day of May, 2024.

/s/ Shirley LaVarco
Shirley LaVarco (*pro hac vice*)*
shirley@civilrightscorps.org
Brittany Francis (*pro hac vice*)†
brittany@civilrightscorps.org
Jeffrey D. Stein (Texas Bar No. 24124197; S.D. Tex. Bar No. 3600520)‡
jeff@civilrightscorps.org
Civil Rights Corps
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
Telephone: (202) 844-4975
* Admitted to practice in the District of Columbia (Bar No. 90005167).
† Admitted to practice in New York (Bar No. 5337555) and the District of Columbia (Bar No. 90008960)
‡ Attorney-in-Charge.