IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KERRY LEE THOMAS, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | Civil Action No. 4:23-cv-00662 |
| | § | |
| ROBERT JOHNSON, | § | |
| ERIC M. BRUSS, | § | |
| WAYNE SCHULTZ, | § | |
| And THE ESTATE OF ROBERT JOHNSON | § | |
| *Defendants.* | | |

### DEFENDANTS ERIC M. BRUSS AND WAYNE SCHULTZ'S
### MOTION TO EXCLUDE PORTIONS OF THOMAS TIDERINGTON'S TESTIMONY

Defendants Eric M. Bruss and Wayne Schultz file this Motion to Exclude Portions of Thomas Tiderington's Testimony as follows:

#### SUMMARY OF THE ARGUMENT

This civil rights lawsuit stems from the apprehension and arrest of Plaintiff Kerry Lee Thomas ("Thomas") on February 22, 2021. [Dkt. No. 86]. Thomas brought this lawsuit against the Estate of Robert Johnson[1], Deputy Eric Bruss ("Bruss") and Sergeant Wayne Schultz ("Schultz") for injuries he sustained from the canine Deputy Robert Johnson ("Johnson") unleashed. [*Id.* at ¶ 2]. Thomas claims that Bruss and Schultz violated Thomas's Fourth Amendment rights by failing to protect him and failing to intervene in Johnson's alleged unconstitutional excessive use of force. [*Id.* at ¶¶ 75, 76].

Thomas retained Thomas J. Tiderington ("Tiderington") "to analyze the case and provide assessments and conclusions regarding the conduct of the defendant officers with reference to the relevant law enforcement standards, policies, and procedures." *See* Tiderington's Report, attached as Exhibit A. His overarching opinion is that Johnson's use of force and Bruss's and Schutlz's alleged failure to intervene were unreasonable and substantially deviated from widely accepted police policies,

---

1  Deputy Johnson is deceased. [Dkt. No 86 at ¶11].

practices, and procedures. Exhibit A at p. 4. In making these opinions, he interprets body-worn camera footage and speculates about the Defendants' states of mind. In addition, he opines on the proximate cause of Thomas's injuries. These opinions must be excluded because they constitute impermissible legal conclusions concerning the central issues underlying Thomas's Section 1983 claims and improperly intrude upon the roles of both the Court and the jury. Additionally, Tiderington is not qualified to offer testimony regarding the nature or extent of Thomas's injuries. Finally, Tiderington's Exhibits 10, 11, and 12 must be stricken as unreliable and inadmissible evidence. As such, Defendants move to exclude these portions of Tiderington's testimony.

**ARGUMENT AND AUTHORITIES**

**A.      Standard of Review**

Rule 702 of the Federal Rules of Evidence provides limits for an expert by knowledge, skill, experience, training, or education to testify in the form of an opinion. FED. R. EVID. 702. The expert's specialized knowledge must help the trier of fact understand the evidence to determine a fact in issue; be based on sufficient facts or data; be the product of reliable principles and methods; and those principles and methods must have been reliably applied to the facts. *Id.*; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). This Court functions as the "gatekeeper" and must evaluate whether the proponent of expert testimony meets his burden to establish its admissibility. *See Daubert*, 509 U.S. at 591; *Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, 2022 WL 2133870, at *1 (N.D. Tex. June 14, 2022). That gatekeeping function applies not only to "scientific" testimony, but to all expert testimony based on "technical" or "other specialized" knowledge. *Carmichael*, 526 U.S. at 147–48. In determining whether a witness is qualified as an expert in the relevant field, the Court must assess "whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *See id.* at 156. Even if a witness is unquestionably an expert on some subject, his qualifications and competence must match the subject matter of the testimony the witness is providing. *Salinas v. State*

*Farm Fire & Cas. Co.*, 2012 WL 5187996, at *4 (S.D. Tex. Feb. 23, 2012) (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

The Court's gatekeeping role is also to make certain that an expert employs in the courtroom the same level of intellectual rigor that characterizes his practice in the relevant field. *Carmichael*, 509 U.S. at 152. Even if an expert is qualified, his opinion must be valid and reliable. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (citing *Carmichael*, 526 U.S. 147); *see also Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 401–03 (5th Cir. 2016) (excluding an expert's theory when unsupported by reliable facts or data). In its opinion in *Daubert*, the United States Supreme Court outlines several nonexclusive factors that a trial court may consider when determining an expert's reliability, including: (1) whether the theory or technique can be and has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of errors; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether it has attained general acceptance. *Daubert*, 509 U.S. at 592–94. These factors are not mandatory or exclusive; however, the existence of sufficient facts and a reliable methodology are "in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). To meet the threshold requirements for admissibility, the opinion testimony offered must rise above the level of "subjective belief" or "speculation." *See Daubert*, 509 U.S. at 590.

**B.      Tiderington's opinions as to the reasonableness of Defendants' actions should be excluded as improper testimony on legal issues.**

Although Rule 704 permits expert opinion testimony that embraces an ultimate issue, "an expert witness is not allowed to opine on legal conclusions that should be drawn from the evidence, because this 'both invades the court's province and is irrelevant.'" *Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, 2022 WL 2133870, at *2 (N.D. Tex. June 14, 2022) (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)). "Experts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (because the question of

reasonableness of force under the Constitution is a legal conclusion, an expert cannot opine whether a police officer used excessive force) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009), *cert. denied*, 558 U.S. 148 (2010)). "Reasonableness under the Fourth Amendment ... is a legal conclusion." *Boston v. Harris Cnty., Tex.*, 2014 WL 1275921, at \*14 (S.D. Tex. Mar. 26, 2014) (citing *U.S. v. Williams,* 343 F.3d 423, 435 (5th Cir. 2003)).

The trier of fact in this matter will have to decide whether Bruss and Schultz (i) knew that Johnson was violating Thomas's constitutional rights by using excessive force, (ii) had a reasonable opportunity to prevent the violation, and (iii) chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), *cert. denied*, 527 U.S. 1087 (2014) (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)). These determinations fall squarely within the province of the jury—not an expert witness. It is therefore up to the jury, not Tiderington, to decide whether Schultz and Bruss knew Johnson used excessive force when he unleashed the canine, and whether their alleged failure to intervene was unreasonable. Despite this, Tiderington's report is replete with impermissible legal conclusions, including:

- Schultz and Bruss violated widely accepted police practices and department policy by neglecting to intervene in Sergeant Johnson's unreasonable and unnecessary use of force and actively participating in the ongoing abuse. *See* Exhibit A at p. 9.

- Furthermore, I did not detect any remarks from either Mr. Thomas or Mr. Gray that could reasonably be construed as a verbal threat toward the officers or anyone else. The absence of threatening behavior, coupled with the officers' failure to adhere to basic tactical principles, strongly suggests that their response was unjustified and inconsistent with generally accepted law enforcement standards. *Id.* at p. 30.

- Defendants Bruss and Schultz either knew or should have known that Sergeant Johnson's deployment of the department's canine was unjustified, yet they took no action to prevent, terminate, or intervene in the unjust attack, resulting in severe harm and injury to Mr. Thomas. *Id.* at p. 40.

- Corporal Schultz and Deputy Bruss each violated widely accepted police practices and standards by neglecting to intervene and prevent Sergeant Johnson from employing unreasonable and unnecessary force against Mr. Thomas. Both Schultz and Bruss had the opportunity to prevent the unnecessary use of force but failed to act accordingly.

In fact, they not only neglected to intervene, but they also actively participated in the abuse. *Id.* at p. 43.

- Rather than verbally or physically intervening to stop Johnson from unnecessarily deploying his attack canine, Bruss actively participated in the unjustified mistreatment of Thomas. . . By not intervening and partaking in the abuse, Bruss not only failed to prevent the unjustified use of force but also directly contributed to it. *Id.* at p. 48.

- Bruss engaged and participated in the unjustified use of force and mistreatment of Mr. Thomas. *Id.*

Tiderington often uses "unnecessary" and "unjustified" instead of "unreasonable" to mask his legal conclusions. He also writes a "disclaimer" in his report indicating that his use of terminology is not intended to draw legal conclusions. Exhibit A at p. 16. However, Tiderington's disclaimer has been rejected by a court before. *See Bailey v. Ramos*, 2022 WL 17658641, at *4 (W.D. Tex. Nov. 21, 2022) ("Despite [Tiderington's] disclaimer, reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion."). Courts have also rejected Tiderington's opinions pertaining to an officer's "unnecessary, excessive and unreasonable" actions that "deviated from acceptable law enforcement standards" as inadmissible legal conclusions. *Id.*; *see also Jarvis v. City of Daytona Beach*, 2024 WL 3325938, at *2 (M.D. Fla. July 8, 2024) ("To the extent Mr. Tiderington opines that Defendants' application of force was unreasonable or unjustifiable that is not a matter subject to expert testimony and must be excluded . . . Defendants' motion to exclude Opinion One is granted to the extent that Mr. Tiderington may not opine that Defendants' application of force was unreasonable or unjustifiable.") (internal citations omitted).

Accordingly, because courts have already found that Tiderington cannot opine whether an officer's actions were reasonable, justified, or necessary, this Court should exclude Tiderington's testimony that Johnson's use of a canine constituted excessive force and any testimony that Bruss's and Schultz's conduct was unreasonable. Furthermore, permitting Tiderington to offer such opinions would improperly invade the province of the jury by addressing ultimate legal issues that are properly the subject of argument by counsel, not expert testimony. *Cloward v. Aurora Loan Servs. LLC*, 2013 WL

12143968, at *3 (E.D. Tex. Apr. 3, 2013) (excluding expert testimony on violation of Fair Debt Collection Practices Act because "an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument") (citing *Salas*, 980 F.2d at 305)). For these reasons, Tiderington's improper legal conclusions must be excluded.

## C. Tiderington's testimony interpreting the body camera footage should be excluded because it will not aid the jury.

To be admissible, expert testimony must be relevant, not simply in the sense that all testimony must be relevant, but in that the expert's proposed opinion must assist the trier of fact in understanding or determining a fact in issue. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591–92). Further, expert testimony is unnecessary if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990); *Kyong Hui Lane v. Target Corp.*, 2006 WL 870805 at *5–6 (S.D. Tex. Apr. 3, 2006) (excluding expert testimony where opinion was based on nothing more than logic and common sense); *U.S. v. Christian,* 673 F.3d 702, 710 (7th Cir.2012) ("[A] layperson needs no expert assistance to understand how one would have to move his arms to pull something out of this waistband" and "a witness should not be allowed to put an 'expert gloss' on a conclusion that the jurors should draw themselves."). Moreover, "a number of courts have addressed expert testimony on video recordings and have concluded that the expert should not be permitted to interpret the video's contents where the expert is no better suited than a lay person to do so." *Bailey*, 2022 WL 17658641, at *5; *see also Slack v. City of San Antonio*, 2021 WL 1390428, at *4 (W.D. Tex. Apr. 13, 2021), *reconsideration denied*, No. 2021 WL 1857301 (W.D. Tex. Apr. 30, 2021) (excluding testimony interpreting video evidence); *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010) (affirming exclusion of expert opinion that decedent was not holding firearm because "the jury was entirely capable of analyzing the images and determining whether Fong Lee had anything in his hands"); *Dunlap v. Hood*, 2009 WL 362292, at *1 (N.D. Tex. Feb. 13, 2009) (prohibiting forensic analyst

from testifying as to the contents of video on use-of-force incident because he was "no better suited than the jury to interpret the contents of the video").

Consequently, the Court should prohibit Tiderington from testifying as to what the officer's body camera footage depicts, since such testimony "does nothing to assist the jurors, who can make their own determination as to whether the video is consistent with or contradicts the various parties' account of the events leading up to and during the [apprehension of Thomas]." *Slack*, 2021 WL 1390428, at *3. Therefore, because the fact finder can draw their own conclusions from the videos, any testimony, including but not limited to the following about Tiderington's interpretation of the body camera footage should be excluded:

- Contrary to claims made in Sergeant Johnson's incident report, no evidence indicates that Mr. Thomas or Mr. Gray ever attempted to walk away from the scene. Rather, the BWC and dashcam footage demonstrate that both Mr. Thomas and Mr. Gray immediately raised their arms and complied with orders throughout the incident. Exhibit A at p. 6.

- The BWC further shows that Mr. Thomas made no attempt to walk away from the scene or otherwise evade police custody or control. *Id.* at p. 8.

- Despite Defendants' claims otherwise, the dispatch records along with the BWC and dashcam footage clearly show that dispatch never said that the suspects were armed, that Mr. Thomas and Mr. Gray made no attempt to flee, and that Mr. Thomas was compliant with orders and posed no threat throughout the encounter. *Id.* at p. 11.

- It is apparent from the BWC that Mr. Thomas is trying to stand up to comply with Defendants' latest directives. *Id.* at p. 23.

- Moreover, as illustrated in the dashboard camera footage and detailed in his report, Johnson advanced ten steps towards Gray, completely exposing himself to any presumed concealed threat from within the PT Cruiser. Additionally, I noted that from this viewpoint, Johnson had a clear line of sight into the vehicle's interior and would have been able to ascertain that no one was inside. *Id.* at p. 33.

**D.**     **Tiderington's testimony about what Bruss and Schultz "knew or should have known" should be excluded, as it improperly offers expert opinions on states of mind—matters outside Tiderington's expertise and reserved for the jury.**

"[A]n expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible." *Marlin v. Moody Nat. Bank, N.A.*, 248 F. App'x. 534, 541 (5th Cir. 2007) (citing *Salas*, 980

F.2d at 305 (finding that the expert was "not in a better position than a juror to conclude whether [defendant's] actions demonstrated such a lack of concern for [plaintiff's] safety as to constitute deliberate indifference or conscious disregard.")). Opinions about what a defendant knew or should have known do not rely on "scientific, technical, or other specialized knowledge [to] help the trier of fact to understand the evidence or to determine a fact in issue." *Jenkins v. Helmrich & Payne Int. Drilling co.*, 577 F. Supp.3d 587, 597 (S.D. Tex 2021) (quoting Fed. R. Evid. 702).

Tiderington cannot opine on Bruss's and Schultz's states of mind because what Bruss and Schultz knew or should have known is a matter for the fact finder to determine. Tiderington "has no special insight" into whether Bruss and Schultz knew Johnson was going to release the dog, whether they knew Thomas was unarmed, or knew what Thomas's intentions were. *See id.* ("Whether the Defendants knew or should have known about the condition on the stairs is a matter that lay jurors can determine for themselves. Kendzior arrives at this conclusion by noting the instances in the record where the Defendants were apparently made aware of an issue with the stairs. But Kendzior has no special insight into whether the Defendants knew what was happening on the rig."). In fact, Bruss testified that he believed Thomas was armed. Exhibit B at 214:20-25; 215:1-2. Tiderington is not in a position to challenge that belief. It is the role of the jury—not an expert witness—to assess the credibility of the Defendants' testimony. *Boston*, 2014 WL 1275921, at *14 (citing *Marlin*, 248 F. App'x. at 541) ("An expert is not in better position than the jury to evaluate credibility and states of mind."). Likewise, Tiderington cannot offer opinions regarding Thomas's intentions, such as whether he intended to flee or pose a threat to the officers. Schultz testified that he remained on heightened alert when Thomas lifted his head, based on his experience that suspects sometimes attempt to flee in such situations. Exhibit C at 281:18-282:6. In short, neither Schultz nor Bruss knew Thomas's intentions in that moment—so Tiderington certainly cannot assert that they "knew or should have known" anything specific about Thomas's state of mind. Such testimony is speculative and invades the jury's role in determining the facts and mental states at issue. Therefore, the following testimony should be

excluded:

- Rather, the BWC and dashcam footage, along with the dispatch report, clearly establishes that Defendants Johnson, Bruss, and Schultz knew or should have known that Mr. Thomas and Mr. Gray were unarmed. Exhibit A at p. 5.

- Defendants knew or should have known, based on information provided from the dispatcher, that the homeowner/reportee was armed but that there was no evidence to suggest that Mr. Thomas or Mr. Gray were armed. *Id.* at p. 11.

- Defendants were aware or should have been aware that Mr. Thomas immediately placed his hands in a position of "surrender" upon their arrival, and that he complied with their orders, despite hearing repeatedly conflicting directives. *Id.*

- Based on Mr. Thomas's "don't shoot" stance and a lack of visible weapon in his waistband or pockets, Defendants knew or should have known that Mr. Thomas was not armed. *Id.*

- Defendants knew or should have known that Mr. Thomas made no attempt to walk away from the scene, flee, or resist. *Id.*

- Defendants knew or should have known that Mr. Thomas had committed no arrestable offense, was fully compliant, and never attempted to flee from custody. *Id.* at 12.

- This audio captured confirmation strongly suggests that Sergeant Johnson and the other defendant Deputies knew or should have known that it was Mr. Gashi who was in possession of a weapon, rather than Mr. Thomas or his friend Rapheal Gray. *Id.* at 18.

- Schultz knew or should have known that Johnson intended to release the canine yet made no attempt verbal or otherwise to prevent him from doing so. *Id.* at p. 48.

- Bruss either knew or should have known that Thomas was entirely under the control of Sergeant Johnson and posed no threat to the Deputies. *Id.*

- Schultz knew or should have known that the arrest of Mr. Thomas (and Mr. Gray) was unjustified based on the totality of circumstances. *Id.*

- Bruss knew or should have known that the basis for the 911 response was due to a disturbance and the responding Deputies were told that the homeowner was armed, not Thomas or Gray. *Id.* at p. 50.

- Bruss knew or should have known that based on the provided information from his dispatcher there was not any basis to believe that Thomas had committed a crime or an arrestable offense. *Id.*

**E.     Tiderington's testimony regarding the proximate cause of Thomas's injuries should be excluded because he is not qualified to opine on this subject.**

Tiderington is not qualified to opine as to whether and to what extent the canine caused Thomas's injuries, as that exceeds the scope of his expertise. Tiderington's testimony on this subject has been excluded before. *Bailey*, 2022 WL 17658641, at *3 ("Plaintiff has not demonstrated how any of Chief Tiderington's credentials or experience make him qualified to opine on proximate cause of physical injuries."). And he has conceded that he is not a medical expert. Exhibit D at 16:14-15. Therefore, "all portions of Chief Tiderington's expert report [and] deposition testimony [] concerning his opinion as to the proximate cause of Plaintiff's injuries are improper and should be stricken." *Bailey*, 2022 WL 17658641, at *3.

**F.     Exhibits 10, 11, and 12 of Tiderington's report must be excluded as inadmissible evidence.**

Tiderington relies on AI-generated transcripts of body-worn camera footage from Officers Bruss, Schultz, and Johnson. (Exhibits A-10, A-11, and A-12). These transcripts are inadmissible because they lack authentication and any foundation establishing their accuracy, as required by Federal Rule of Evidence 901. Fed. R. Evid. 901. Moreover, the statements in the transcript also contain hearsay and are incredibly unreliable compared the actual audio recordings. Fed. R. Evid. 801. Given these evidentiary deficiencies, the Court should strike Exhibits A-10 through A-12 and preclude Tiderington from relying on them to support his testimony.

<u>**P**RAYER AND **C**ONCLUSION</u>

Defendants Eric M. Bruss and Waynes Schultz pray that this Court grant this motion to exclude portions of Tiderington's opinions and prohibit Tiderington from proffering these opinions at the trial of this matter. Defendants pray for such other and further relief, general or special, at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,

**Thompson & Horton LLP**

By:   /s/ Celena Vinson
       Celena Vinson
       State Bar No. 24037651
       cvinson@thompsonhorton.com
       Alexa Gould
       State Bar No. 24109940
       agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6742
Fax: (713) 583-8884

**ATTORNEYS FOR DEFENDANTS
BRUSS AND SCHULTZ**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on August 22, 2025, I communicated with opposing counsel regarding this Motion. Counsel indicated that Plaintiff is unopposed to the relief sought.

*/s/ Celena Vinson*
Celena Vinson

## CERTIFICATE OF SERVICE

On August 22, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Celena Vinson
Celena Vinson