# Exhibit 8

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Kerry Lee Thomas,<br>Plaintiff | §<br>§<br>§<br>§ | |
| vs. | §<br>§ | Civil Action 4:23-cv-00662 |
| Robert Johnson, et al.<br>Defendants. | §<br>§<br>§<br>§ | |

## DECLARATION OF ERIC BRUSS

1.  "My name is ERIC BRUSS. I am over the age of 18 and have never been convicted of any felony or any misdemeanor involving moral turpitude, and am fully competent to testify to all facts contained herein. I am fully competent to make this Declaration. I have personal knowledge of all facts stated herein and state that they are all true and correct.

2.  I began working as a certified correctional peace officer in 1999 for the State of Arizona. In 2001, I became a federal police officer with U.S. Department of Veterans Affairs. After being assigned to Houston, I became licensed by Texas Commission on Law Enforcement Standards and Education. In January 2005, I went to work as a police officer for the Santa Fe Police Department. During this time, I served as a patrol sergeant, police detective, task force agent and a canine handler.

3.  I became a certified canine handler in 2000 after attending approximately 320 hours of training and a ten-week live-in academy hosted by the Arizona Department of Corrections. During my career as a canine handler, I have been certified by the National Narcotic Detector Dog Association (NNDDA), the National Police Canine Association (NPCA) and the International

*Eric Bruss Declaration*

Police Work Dog Association (IPWDA). My most recent certification came from the Harris County Sheriff's Office in 2019 and the NNDDA.

4. During my time as certified dog handler, I have attended thousands of hours of training related to police canine operations. I have also supervised and trained canine handlers from many different agencies and states. I was a canine sergeant at Santa Fe Police Dept and Harris County Precinct One Constable's Office (HCCO1) where I supervised certified canine handlers.

5. In 2013, I began working for the Harris County Precinct One Constable's Office as a patrol officer. During my time at HCCO1, I served as a deputy, a corporal, a trainer, and a sergeant over the patrol canine division.

6. On February 22, 2021, I was employed as a deputy canine handler at the Harris County Constable's Office. I was working the evening shift when I heard a call over dispatch of a weapons disturbance at a home. The call was sent as a Priority One Weapons Disturbance which meant that it is an expedited emergency call, and officers are expected to respond with lights and sirens. A priority one call is highest level of response that our officers are called to and any officer not already on an emergency call was expected to respond.

7. I was able to hear on my radio that two suspects came to a home on Capstone Drive and were screaming and yelling and this what the second time they been to the home. I asked dispatch over my car radio who had their weapon out, the suspects or the reportee. Dispatch responded that it was the suspects who were armed. Dispatch later updated the call and said the reportee who had his weapon out. I was approximately five minutes from the location.

8. Sergeant Robert Johnson was lead officer and the first to arrive at the scene. Johnson was my supervisor. I heard Johnson report over the radio that the suspects were not complying and at least one was saying they wanted to die and to shoot him.

*Eric Bruss Declaration*

9. When I arrived, I observed Johnson outside of his vehicle with his K9 with his gun drawn. I parked to the right of Johnson's vehicle. I observed the driver seated halfway in the vehicle and the passenger standing outside the car with his arms in air. I could hear the passenger saying, "all lives matter." Johnson told me as soon as I arrived that the driver was not complying and that he was reaching in the vehicle. Because of this, I instructed the driver to get out of vehicle and put his hands in the air. At this time, Thomas yells at the driver to show me his hands. I then instructed the driver to walk towards me. I had to repeat my instructions to driver before he complied. I warned the driver that if he tried to run, he was going to get bit by the dog. I then instructed him to get on the ground and put his hands by his side. The driver complied with my instructions.

10. After the driver got on the ground, I informed Johnson that I had him at gunpoint. The purpose of this was to let Johnson know that I was watching the driver and he could now take the passenger into custody. At one point, the driver lifted his head, and I instructed him to keep his head down. In my experience and training, suspects who intend to flee look around to see where they can go. I then informed the suspects that "we had been told you got a gun, until we determine you don't this is what is going to happen." See BWC at 19:25:02. Thomas then can be heard saying, "that's a good dog." See BWC at 19:25:20.

11. I have learned through my training and experience that talking to suspects and explaining officer's actions helps deescalate the situation. I explained to the driver that he was an unsearched suspect and until I knew he didn't have a gun, he had better comply. I observed that the driver was wearing pants and a hoodie and could easily have been concealing a weapon. Thomas was wearing sweatpants and sneaker and could also have had a weapon in his clothing.

12. Schultz then instructed me to get the driver in custody first. I began giving the driver commands to stand up and walk towards me with his back to me. I continued telling the driver to

*Eric Bruss Declaration*

step back and then to get on his knees. The driver complied and was handcuffed by Officer Tuzun. During this time, I had my weapon drawn for the safety and security of officers and bystanders and per my training.

13. After the driver was in custody, I turned my attention to vehicle the suspects were in. Wayne Schultz and Johnson gave Thomas multiple commands to step up. After failing to comply with the officer's orders, Johnson released his K9. I did not know when or if Johnson was going to release his K9. Johnson was in charge of getting Thomas in custody. I was focused on the car.

14. After the dog apprehended Thomas, I checked the vehicle for other occupants or threats. I informed Johnson that the vehicle was clear. Then I told Thomas that as soon as he was handcuffed, we would take the dog off the bite. As soon as I saw that Thomas was in handcuffs, I told Johnson to take the dog off the bite which he did. After the bite, I noticed that Thomas was nonresponsive which indicated he was possibly under the influence of narcotics. Therefore, I administered a dose of Narcan to Thomas through his nose and he immediately became coherent again confirming that he was under the include of narcotics. Without the Narcan, Thomas may have died due to the ingestion of drugs.

15. After the bite, EMS was called and medics attended to Thomas's wound. The injury that Thomas sustained from the dog bite was not life threatening or an injury that required surgery. I have learned that Thomas received eight staples and was released from the hospital the same day he was admitted.

16. My focus and job at the scene were to take control of the driver and check the vehicle for threats. I did not observe what Johnson observed when he first arrived nor was my attention focused on Thomas throughout the encounter. The information I relied on was that the

*Eric Bruss Declaration*

suspects were armed and were not complying. Based on this, I had no reason to believe Johnson's use of force was unreasonable. After the dog apprehended Thomas, Johnson immediately attempted to put Thomas in handcuffs. I had no reason to intervene at this time and had I attempted to intervene physically or verbally, it could have made the scene less safe.

17. Based on the suspects' demeanor, including Thomas's statements that he was ready to die, the suspect's noncompliance, the nature of the call, and the time of night it was not safe for the officers or Thomas to remove the dog until Thomas was handcuffed. I observed that the driver was wearing pants and a hoodie and could easily have been concealing a weapon. Thomas was wearing sweatpants and sneakers and could have easily have had a weapon in his clothing.

18. In my training and experience, police canines are often used as deterrents. I have threatened to release my canines on hundreds of occasions without actually deploying the dog. A majority of the time, suspects comply at the threat of a canine apprehension. There is no way for an officer to know when another officer is going to release his canine.

19. I declare under penalty of perjury that the forgoing is within my personal knowledge and is true and correct."

SIGNED this 19 day of August, 2025.

Eric Bruss

*Eric Bruss Declaration*