# Exhibit 13

```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF TEXAS

 3                         HOUSTON DIVISION

 4   _____

 5   KERRY LEE THOMAS,

 6        Plaintiff,

 7     v.                              Civil Action No.:

 8   ROBERT JOHNSON,                   4:23-cv-00662

 9   ERIC M. BRUSS, WAYNE SCHULTZ,

10   and THE ESTATE OF ROBERT JOHNSON,

11        Defendants.

12   _____

13                     VIDEOTAPED DEPOSITION

14   _____

15

16   WITNESS:              THOMAS J. TIDERINGTON

17   DATE:                 Thursday, June 5, 2025

18   START TIME:           9:02 a.m., CT

19   END TIME:             4:05 p.m., CT

20   REMOTE LOCATION:      Remote Legal platform

21   PROCEEDINGS OFFICER:  Valeria Del Rio, CDR-1724

22   JOB NO.:              36954

23

24

25
```

```
 1                  A P P E A R A N C E S

 2

 3        CIVIL RIGHTS CORPS

 4        1601 Connecticut Avenue Northwest

 5        Suite 800

 6        Washington, District of Columbia 20009

 7        By:   SHIRLEY LAVARCO, ESQUIRE

 8              shirley@peoplescounsel.org

 9              BRITTANY FRANCIS, ESQUIRE

10              brittany@peoplescounsel.org

11              ALESSANDRO CLARK-ANSANI, ESQUIRE

12              alessandro@civilrightscorps.org

13        Appearing for Plaintiff

14

15        THOMPSON & HORTON, LLP

16        3200 Southwest Freeway

17        Houston, Texas 77027

18        By:   CELENA VINSON, ESQUIRE

19              cvinson@thompsonhorton.com

20        Appearing for Defendants, Eric Bruss and Wayne

21        Schultz

22

23

24

25
```

```
 1                A P P E A R A N C E S  (Continued)

 2

 3   ALSO PRESENT:

 4       Ali, Thompson & Horton Tech Expert

 5       Cassidy Kristal-Cohen, Paralegal for Plaintiff

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                I N D E X   O F   T E S T I M O N Y

 2

 3    EXAMINATION OF THOMAS J. TIDERINGTON:                PAGE

 4         By Ms. Vinson                                      9

 5         By Ms. LaVarco                                   231

 6         By Ms. Vinson                                   265

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              I N D E X   O F   E X H I B I T S

 2                   (available for download)

 3

 4    EXHIBIT    DESCRIPTION                             PAGE

 5    22         Expert report of Thomas J. Tiderington   243

 6    23         Constable Alan Rosen - Department Use    253

 7               of Force

 8    24         Cover Sheet Dispatch Report              275

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        (Off the record.)
 2             THE PROCEEDINGS OFFICER:  It is 10:32
 3   a.m.  We are back on the record.
 4   BY MS. VINSON:
 5        Q    Okay.  Mr. Tiderington, we're back from break.
 6   I just want to ask you some general police officer
 7   questions based on your training and experience.
 8             You would agree with me that individuals can
 9   hide guns in their pants, correct?
10        A    Again, I would need additional context to --
11   to answer that question.  I mean, I guess the answer
12   could -- is -- is yes if they're wearing blue jeans, and
13   I guess the answer would be no if they're wearing
14   spandex.  But generally speaking, I -- I would agree
15   that weapons could be concealed in -- in clothing, yes.
16        Q    Wait, wait.  Is it your testimony that weapons
17   can't be concealed in pants if they are spandex or have
18   an elastic waist?
19        A    Well, maybe spandex was --
20             MS. LAVARCO:  Objection.  Misstates
21   testimony.
22             THE WITNESS:  What I was visualizing with
23   spandex is that if -- if it was a -- and maybe that was
24   the wrong description, but if it's something that is
25   tightly fitted to the body, and it's obvious that the --
```

```
 1                    THE WITNESS:  I'm sorry.  Which person
 2    are you referring to?  Hypothetically, which -- I know
 3    it's a --
 4    BY MS. VINSON:
 5        Q    Is there (indiscernible - simultaneous speech)
 6    --
 7        A    -- hypothetical question.
 8        Q    I'm sorry to interrupt you.  Yeah.  Is there
 9    any way for dispatch to know whether somebody is armed
10    on a -- when they receive a call, when dispatch receives
11    a call from a complainant or a concerned citizen
12    regarding a suspect, is there any way for dispatch to
13    know whether or not a suspect is armed?
14        A    No.  Dispatcher acts on information being
15    provided to that dispatcher.
16        Q    So -- thank you.  So the answer is no.  And
17    even if they were informed that somebody was armed or
18    unarmed, they are just relaying information they
19    receive, right?
20        A    That would be correct.
21        Q    So they don't know for sure -- they can never
22    know for sure in their perspective whether an individual
23    has a weapon; isn't that right?
24                    MS. LAVARCO:  Object to form.
25
```

```
 1                THE WITNESS:  I would agree with that,
 2    yes.
 3    BY MS. VINSON:
 4         Q    And you'd agree with me that dispatch doesn't
 5    investigate crimes, correct?
 6         A    Well, I guess I would have to disagree with
 7    that, and -- and we would have to define what
 8    investigate means.  Dispatchers are trained to gather
 9    information.  I guess I would consider that a type of
10    investigation.
11              When -- when you train a dispatcher to ask
12    questions, I believe that's an investigation.  Perhaps
13    it's not the same investigation that's done by a police
14    detective, but I would consider that dispatchers are
15    trained to gather relevance and important information to
16    guide the officers, yes.
17         Q    Okay.  But you would never rely on dispatch
18    information alone to determine whether a crime had been
19    committed, would you?
20         A    Again, you know, I'm thinking through all the
21    different hypotheticals, and whenever you use the words
22    "you would never," it causes me pause.  I'm sure there's
23    exceptions.
24              I -- I think if you're asking me what the
25    rules should be, it should be that the information
```

```
 1      Q    Mr. Tiderington, I'm not tricking you.  You're
 2  the one who said that they had information that there
 3  was a trespass, right?  I'm not saying whether -- I'm
 4  not asking you whether Mr. Thomas committed a trespass.
 5  Okay.  We've got several more hours.  We're going to
 6  take this step by step.
 7           My question was simply:  Is criminal trespass
 8  a crime?  So there's no, like, not wanting you to go
 9  further.
10           MS. LAVARCO:  Objection.  Misstates prior
11  testimony.
12           He said they had information concerning a
13  possible trespass, so you're mischaracterizing his
14  testimony.  I think that's the source of the confusion
15  here.
16           MS. VINSON:  I'm not confused.
17  BY MS. VINSON:
18      Q    So, Mr. Tiderington, you testified that police
19  officers always go to calls by homeowners.  Why is that?
20      A    Well, again, it's typical for an officer to
21  respond to a complaint of a homeowner.  It's been my
22  experience that officers will respond if -- if a
23  homeowner calls concerning a -- a incident that they may
24  be concerned about.
25
```

```
 1      Q    And officers treat those incidents and claims
 2 very seriously, correct?
 3      A    They should, yes.
 4      Q    In fact, criminal trespass of a habitation is
 5 an enhanced crime, isn't it?
 6      A    That I don't know.
 7      Q    Have you ever responded to a burglary of a
 8 home?
 9      A    I have, on many occasions.
10      Q    In your experience and training, is that very
11 frightening for the homeowners?
12      A    It could be, yes.
13      Q    Could it be very dangerous for the homeowners?
14      A    It could be if they were home.  Perhaps, not
15 if they weren't home, but yes.
16      Q    What about criminal trespass of a habitation?
17 Could that be very concerning?
18      A    Depends on what the facts are.  You might have
19 a 14-year-old kid hit his baseball over the fence, and
20 he climbed over the fence to get his baseball.  And I
21 don't know if that would be a frightening situation for
22 the homeowner.
23      Q    Do you think that that is a criminal trespass?
24 Do you think that's what I was referring to?
25
```

```
 1      Q    Based on your training and experience with K-
 2   9s, do you agree with me that threatening to send a dog
 3   on a suspect is a de-escalation tactic?
 4      A    Quite frankly, depending on circumstances, it
 5   could be either.  It could either escalate a situation
 6   unnecessarily, or it could perhaps de-escalate a
 7   situation.  If an individual was thinking about
 8   escaping, if he had committed a serious felony, if he
 9   was getting ready to run, you could consider that
10   perhaps to be a deterrent.
11           But how we describe de-escalation and how
12   Officer Redd described de-escalation, it is not
13   necessarily a show of force.
14      Q    Isn't it true that many times officers, K-9
15   handlers will threaten to release the dog, but they
16   often do not in fact do it?
17      A    That happens.  I would agree with you, yes.
18      Q    And is it the purpose to gain some compliance
19   from an individual?
20                MS. LAVARCO:  Objection.  Incomplete
21   hypothetical.
22                THE WITNESS:  It could be, again, given
23   the facts and circumstances, not necessarily the facts
24   and circumstances of this case, but if it was -- there's
25
```

```
 1      Q    Let's see.
 2           (Video played.)
 3    BY MS. VINSON:
 4      Q    He says, All lives matter, right there?
 5      A    It appears.  I -- again, I -- I know he said
 6    that at some point, but what you're asking me to listen
 7    to is not clear -- really clear on my end of this.
 8           (Video played.)
 9    BY MS. VINSON:
10      Q    So you'd agree with me that if the driver was
11    seated in his car and reaching, that would be a concern
12    for the officers, correct?
13                MS. LAVARCO:  Objection.  Calls for
14    speculation.  Assumes facts not in evidence.
15                THE WITNESS:  If you're -- if it's a
16    hypothetical question, if somebody is reaching in a
17    situation like this, if the occupant, the driver, is
18    reaching under the seat, or -- it could cause the
19    officer to be concerned, rightfully concerned, yes.
20           (Video played.)
21    BY MS. VINSON:
22      Q    Did you see Johnson's firearm out during that
23    time?
24      A    (No audible response.)
25      Q    Do you need me to back it up?
```

```
 1       Q    Okay.  And I'll represent to you that failure
 2   to intervene by law, that that is -- that is the
 3   standard as well.
 4            Is it your opinion that once the dog is biting
 5   Thomas, it would have been safe for Bruss to intervene
 6   physically?
 7       A    Physically?  Physically, no.  I -- it was a
 8   vicious animal, and I don't think it would have been
 9   appropriate.  Although Bruss is a trained K-9 handler,
10   so he may have had the ability to do so, but I don't
11   believe that I came to that conclusion.
12       Q    Okay.  Same question for Schultz.  Would you
13   agree with me that it would not have been safe for
14   Schultz to physically intervene after the dog
15   apprehended Thomas?
16       A    I agree.
17       Q    You're aware that Bruss gave Thomas Narcan
18   after the incident, correct?
19       A    That's correct.
20       Q    And you'd agree with me that that was an
21   appropriate and reasonable thing to do, right?
22       A    I didn't see anything inappropriate about
23   that.  I'm not a medical doctor, so.  But I didn't find
24   that to be inappropriate.
25
```

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF TEXAS

 3                       HOUSTON DIVISION

 4  _____

 5  KERRY LEE THOMAS,

 6         Plaintiff,

 7    v.                                Civil Action No.:

 8  ROBERT JOHNSON,                     4:23-cv-00662

 9  ERIC M. BRUSS, WAYNE SCHULTZ,

10  and THE ESTATE OF ROBERT JOHNSON,

11         Defendants.

12  _____

13                   REPORTER'S CERTIFICATION

14           DEPOSITION OF THOMAS J. TIDERINGTON

15                   Thursday, June 5, 2025

16  _____

17      I, VALERIA DEL RIO, Court Reporter certify:

18      That the witness, THOMAS J. TIDERINGTON, was duly

19  sworn by the officer and that the transcript of the oral

20  deposition is a true record of the testimony given by

21  the witness.

22

23      That the original deposition was delivered to

24  CELENA VINSON;

25      That the amount of time used by each party at the
```

```
 1   deposition is as follows:
 2        TOTAL TIME ON THE RECORD:  5 hours, 42 minutes
 3        CELENA VINSON - From page 9 to page 230
 4        SHIRLEY LAVARCO - From page 231 to page 265
 5        CELENA VINSON - From page 265 to page 271
 6        That pursuant to information given to the
 7   deposition officer at the time said testimony was taken,
 8   the following includes counsel for all parties of
 9   record:
10        MS. SHIRLEY LAVARCO - Attorney for Plaintiff
11        MS. BRITTANY FRANCIS - Attorney for Plaintiff
12        MR. ALESSANDRO CLARK-ANSANI - Attorney for
13        Plaintiff
14        MS. CELENA VINSON - Attorney for Defendants
15
16        And I further certify that I am neither counsel
17   for, related to, nor employed by any of the parties or
18   attorneys in the action in which this proceeding was
19   taken, and further that I am not financially or
20   otherwise interested in the outcome of the action.
21        Further certification requirements pursuant to Rule
22   203 of the TRCP will be certified to after they have
23   occurred.
24
25
```

```
 1      Certified to by me this 17th day of June 2025.

 2                    [signature]

 3      _____

 4      Valeria Del Rio

 5      REMOTE LEGAL, CRF-12610

 6      11 Broadway, New York, New York 10016

 7      800-752-0155

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```