# Exhibit 14

```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF TEXAS

 3                        HOUSTON DIVISION

 4  _____

 5  KERRY LEE THOMAS,

 6          Plaintiff,

 7      v.                                    Case No.:

 8  ERIC M. BRUSS, WAYNE SCHULTZ,       4:23-cv-00662

 9  and KEITH MORRIS, in his capacity as

10  Temporary Defendant Administrator of

11  The Estate of Robert Johnson,

12          Defendants.

13  _____

14                    VIDEOTAPED DEPOSITION

15  _____

16

17  WITNESS:                  TERRY ANDERSON

18  DATE:                     Thursday, July 31, 2025

19  START TIME:               10:14 a.m., ET

20  END TIME:                 6:02 p.m., ET

21  REMOTE LOCATION:          Remote Legal platform

22  PROCEEDINGS OFFICER:      Dana Alarcon, CER-4446

23  JOB NO.:                  39145

24

25
```

```
 1                  A P P E A R A N C E S

 2

 3       CIVIL RIGHTS CORPS

 4       1601 Connecticut Ave Northwest

 5       Suite 800

 6       Washington, DC 20009

 7       By:  ALESSANDRO CLARK-ANSANI, ESQUIRE

 8            alessandro@civilrightscorps.org

 9       Appearing for Plaintiff

10

11       Peoples' Counsel

12       1900 West Gray Street

13       Houston, Texas 77219

14       By:  SHIRLEY LAVARCO, ESQUIRE

15            shirley@peoplescounsel.org

16            BRITTANY FRANCIS, ESQUIRE

17            brittany@peoplescounsel.org

18       Appearing for Plaintiff

19

20

21

22

23

24

25
```

```
 1                A P P E A R A N C E S (Continued)

 2

 3        THOMPSON & HORTON LLP

 4        3200 Southwest Freeway

 5        Suite 2000

 6        Houston, Texas 77027

 7        By:  CELENA VINSON, ESQUIRE

 8              cvinson@thompsonhorton.com

 9        Appearing for Defendants, Eric M. Bruss and Wayne

10        Schultz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1               I N D E X  O F  T E S T I M O N Y

 2

 3   EXAMINATION OF TERRY ANDERSON:                  PAGE

 4        By Mr. Clark-Ansani                           8

 5        By Ms. Vinson                              270

 6        By Mr. Clark-Ansani                        293

 7        By Ms. Vinson                              311

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1               I N D E X   O F   E X H I B I T S

 2                   (available for download)

 3

 4   EXHIBIT   DESCRIPTION                              PAGE

 5   1         Use of Force Policy                       187

 6   2         Communications Event Report               125

 7   18        Precinct One Department Canine Policy      208

 8   24        Computer-Aided Dispatch Report             143

 9   25        Disclosure of Expert Testimony              63

10   26        IACP Patrol Canines, May 2015               93

11   27        Body Cam Footage                           130

12   28        Johnson Dash Cam Clip                      134

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              Did I read that correctly?

 2      A     Yes.

 3      Q     You agree with this element of Precinct One

 4   policy?

 5      A     Yes.

 6      Q     Did you consider this element of Precinct One

 7   policy informing your opinion?

 8      A     As I read it I certainly did.

 9      Q     How did it affect your analysis?

10      A     It didn't affect my -- my analysis at all.

11      Q     Why not?

12      A     Because there was nothing to quote,

13   deescalate, unquote, because they were getting no

14   compliance, non-compliance from Thomas.  They got

15   compliance from Gray.  He was secured, arrested, and

16   secured for -- with no use of force.  Totally opposite

17   from Thomas.

18      Q     When you say there was nothing to deescalate,

19   does having a canine out at a scene escalate a

20   situation?

21      A     No.  Most of the time it deescalates a

22   situation.

23      Q     How so?

24      A     Because the dog's presence -- people aren't

25   afraid of me and my gun, but my dog could move a lot of
```

```
 1   people.  Same thing here.  The dog's presence, just mere

 2   presence, not doing anything, just mere present, is a

 3   de-escalation form.  Next thing is the dog's vocalness

 4   is a de-escalation form.  So just the dog's presence

 5   there is -- is a de-escalation.

 6        Q    So fear of the dog can deescalate the

 7   situation?

 8        A    That's correct.  Or the respect, we'll put it

 9   like that.

10        Q    Does releasing a canine escalate or deescalate

11   a situation?

12        A    I just answered that.  Depends on the

13   situation.

14        Q    No.  You answered -- you answered that the

15   presence of a dog can deescalate a situation.  I'm

16   asking specifically whether releasing a dog escalates or

17   deescalates a situation.

18        A    Oh.  I didn't -- sorry.  I -- I didn't see --

19   I didn't hear you say release.  It gets to the point

20   where you are -- made the decision that the use of force

21   is objectively reasonable and then you deploy the dog.

22   There's nothing to deescalate at that point, is there?

23        Q    I'm sorry.  I don't -- I don't think that

24   answered the question.  When you release the canine, is

25   that act escalating or deescalating the situation?
```

```
 1                   MR. CLARK-ANSANI:  Objection.

 2                   Calls for speculation.  Leading.

 3                   THE WITNESS:  Obviously, the degree, the

 4     time, the -- the factors involved with that particular

 5     situation can certainly escalate the threat level.  In

 6     this particular incident, obviously, the homeowner had

 7     dealt with him the night before, came back that next

 8     night still yelling and screaming and -- and creating a

 9     disturbance.  His family was there.

10                   It -- it brought him to the point where

11     he felt like he had to protect himself, so he had his

12     own firearm out, didn't put it up and we don't know for

13     sure that he did put it up.  They asked him, matter of

14     fact, Sergeant Johnson had dispatch tell him to put his

15     weapon up.  And he said that he did, but who knows if he

16     really did.

17     BY MS. VINSON:

18         Q    And does the fact that the homeowner have a

19     weapon out create a dangerous situation for the police

20     officers?

21         A    Absolutely.

22                   MR. CLARK-ANSANI:  Objection.

23                   Calls for speculation.  Leading.

24     BY MS. VINSON:

25         Q    Are you aware of incidents where a criminal
```

285

```
 1   BY MS. VINSON:

 2       Q    I'm asking you to read from a document just

 3   like Plaintiff's counsel did for about four hours.  So

 4   you can please read the top.

 5       A    Texas Penal Code.  Penal Code 30.05 point

 6   criminal trespass, current as of January 1, 2024.

 7       Q    Okay.  And is the Texas Penal Code the statute

 8   where Texas crimes are included and their definitions?

 9       A    Yes.

10       Q    And they also have their punishment range; is

11   that right?

12       A    Yes.

13       Q    Okay.  I want you to go down -- okay.  Go down

14   to subsection d, please, lowercase D.  Oh.  Good.  It's

15   moving on your read.  Read what it -- lowercase D says.

16       A    Subsection to subsection D3 an office under

17   this section is class B misdemeanor except as provided

18   in subsection 2, 3, and 4.  Class C misdemeanor except

19   as provided in the subdivision 3, 4 if the offense is

20   committed, 1 --

21       Q    Okay.

22       A    Oh.  Sorry.

23       Q    That's okay.  Thank you for doing that.  Go

24   over and now read subsection D3.

25       A    So I guess it's further down.  Class A
```

1   misdemeanor, except I'm provided by subdivisions and

2   offense committed, inhabitation or shelter.

3        Q    Okay.  Does that -- right there, does that

4   show in the penal code a regular trespass, except for

5   these subdivision -- the sections it points to, is a

6   class B misdemeanor or a class C misdemeanor, but if

7   it's in a habitation, then it's a class A misdemeanor?

8        A    Yes.

9              MR. CLARK-ANSANI:  Objection.

10             Calls for legal conclusion.  Exceeds the

11   scope of direct.

12   BY MS. VINSON:

13       Q    I'm asking you if that's what the penal code

14   says.

15       A    That's what the penal code says.

16       Q    And you recall being asked on cross about

17   severity of the crime?

18       A    Yes.

19       Q    And whether a misdemeanor versus a felony is

20   severe and what types of misdemeanors are severe?

21       A    Yes.

22       Q    Does it appear that the penal code makes the

23   punishment for criminal trespass of a habitation more

24   severe than a regular criminal trespass?

25       A    Yes.

```
 1                UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF TEXAS

 3                     HOUSTON DIVISION

 4    _____

 5    KERRY LEE THOMAS,

 6           Plaintiff,

 7       v.                                 Case No.:

 8    ERIC M. BRUSS, WAYNE SCHULTZ,         4:23-cv-00662

 9    and KEITH MORRIS, in his capacity as

10    Temporary Defendant Administrator of

11    The Estate of Robert Johnson,

12           Defendants.

13    _____

14                  REPORTER'S CERTIFICATION

15              DEPOSITION OF TERRY ANDERSON

16                  Thursday, July 31, 2025

17    _____

18

19       I, Dana Alarcon, Court Reporter, certify:

20       That the witness, TERRY ANDERSON, was duly sworn by

21    the officer and that the transcript of the oral

22    deposition is a true record of the testimony given by

23    the witness.

24       That the original deposition was delivered to

25    Alessandro Clark-Ansani;
```

 1        That the amount of time used by each party at the

 2    deposition is as follows:

 3

 4        TOTAL TIME ON THE RECORD:  6 hours, 23 minutes

 5        Alessandro Clark-Ansani - From page 8 to page 269

 6        Celena Vinson - From page 270 to page 292

 7        Alessandro Clark-Ansani - From page 293 to page 311

 8        Celena Vinson - From page 311 to page 316

 9

10        That pursuant to information given to the

11    deposition officer at the time said testimony was taken,

12    the following includes counsel for all parties of

13    record:

14

15        MR. ALESSANDRO CLARK-ANSANI - Attorney for

16        Plaintiff

17        MS. SHIRLEY LAVARCO - Attorney for Plaintiff

18        MS. BRITTANY FRANCIS - Attorney for Plaintiff

19        MS. CELENA VINSON - Attorney for Defendants

20

21         And I further certify that I am neither

22    counsel for, related to, nor employed by any of the

23    parties or attorneys in the action in which this

24    proceeding was taken, and further that I am not

25    financially or otherwise interested in the outcome of

```
 1   the action.

 2        Further certification requirements pursuant to Rule

 3   203 of the TRCP will be certified to after they have

 4   occurred.

 5        Certified to by me this 14th day of August 2025.

 6

 7

 8   _____

 9                        Dana Alarcon

10                        REMOTE LEGAL, CER-4446

11                        11 Broadway

12                        New York, New York 10016

13                        800-752-0155

14

15

16

17

18

19

20

21

22

23

24

25
```