# Exhibit 17

```
 1              UNITED STATES DISTRICT COURT
 2           FOR THE SOUTHERN DISTRICT OF TEXAS
 3  _____
 4  KERRY LEE THOMAS,
 5        Plaintiff,
 6     v.                              Civil Action No.:
 7  ERIC M. BRUSS, WAYNE SCHULTZ,       4:23-cv-00662
 8  & KEITH MORRIS IN RE ESTATE OF
 9  ROBERT JOHNSON,
10        Defendants.
11  _____
12                   VIDEOTAPED DEPOSITION
13  _____
14
15  WITNESS:                  LIEUTENANT STUART RED
16  DATE:                     Wednesday, August 6, 2025
17  START TIME:               12:13 p.m., ET
18  END TIME:                 5:21 p.m., ET
19  REMOTE LOCATION:          Remote Legal platform
20  PROCEEDINGS OFFICER:      Kindel McDermott, CDR-3527
21  JOB NO.:                  39483
22
23
24
25
```

```
 1                  A P P E A R A N C E S

 2

 3      CIVIL RIGHTS CORPS

 4      1601 Connecticut Avenue Northwest

 5      Suite 800

 6      Washington, District of Columbia 20009

 7      By:   ALESSANDRO CLARK-ANSANI, ESQUIRE

 8            alessandro@civilrightscorps.org

 9      Appearing for Plaintiff

10

11      PEOPLES' COUNSEL

12      1900 West Gray Street

13      Houston, Texas 77219

14      By:   BRITTANY N. FRANCIS, ESQUIRE

15            brittany@peoplescounsel.org

16      Appearing for Plaintiff

17

18      HARRIS COUNTY ATTORNEY'S OFFICE

19      1019 Congress Avenue

20      15th Floor

21      Houston, Texas 77002

22      By:   JAMES BUTT, ESQUIRE

23            james.butt@harriscountytx.gov

24      Appearing for Witness

25
```

```
 1            A P P E A R A N C E S (Continued)

 2

 3        THOMPSON & HORTON, LLP

 4        3200 Southwest Freeway

 5        Suite 2000

 6        Houston, Texas 77027

 7        By:   CELENA C. VINSON, ESQUIRE

 8              cvinson@thompsonhorton.com

 9              ALEXA GOULD, ESQUIRE

10              agould@thompsonhorton.com

11        Appearing for Defendants, Eric M. Bruss and Wayne

12        Schultz

13

14   ALSO PRESENT:

15        Chelsea Johnson, Civil Rights Corps (Observer)

16        Elaina Katz, Civil Rights Corps (Observer)

17        Cassidy Kristal-Cohen, Paralegal, Peoples' Counsel

18

19

20

21

22

23

24

25
```

```
 1                I N D E X   O F   T E S T I M O N Y

 2

 3    EXAMINATION OF LIEUTENANT STUART RED:                PAGE

 4         By Mr. Clark-Ansani                                8

 5         By Ms. Vinson                                    159

 6

 7

 8

 9

10

11

12

13                 I N D E X   O F   E X H I B I T S

14                          (none marked)

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              I N D E X   O F   R E Q U E S T S

 2

 3   DESCRIPTION                                      PAGE   LINE

 4   By Mr. Clark-Ansani:

 5   Request for production of notes made by           93     25

 6   Mr. Red after reading Mr. Tiderington's

 7   Reports.

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1     Q    When?
 2     A    It would have been back when I was in SWAT,
 3   probably.
 4     Q    And when did you finish with the SWAT team?
 5     A    I promoted in 2000, and when you get promoted
 6   at HPD, you leave wherever you're assigned.
 7     Q    So the last time you would have given a
 8   training that dealt with suicide by cop would have been
 9   before the year 2000?
10     A    Probably so.
11     Q    Have you facilitated or led training related
12   to the duty to intervene?
13     A    Not specifically.  No.  It's discussed in use
14   of force training, but nothing specifically to that by
15   itself.
16     Q    Have you facilitated or led training related
17   to de-escalation?
18     A    I think de-escalation is a part of a lot of
19   training, but not de-escalation specifically as a class
20   to itself have I taught.  No.
21     Q    What other types of training was de-escalation
22   a part of?
23     A    When you talk about K-9 training, you talk
24   about de-escalation.  It's part of our scenario-based
25   training.  When you talk about giving commands, you talk
```

```
 1   about giving K-9 warnings.
 2        Q    Have you facilitated or led training related
 3   to identifying community members in mental health or
 4   medical crises?
 5        A    Not specifically.  No.
 6        Q    Have you facilitated or led any policing
 7   trainings related to the duty to render medical aid?
 8        A    Yes.  Some.
 9        Q    Which trainings were those?
10        A    I -- years ago, we had a mandatory first aid
11   class, and I was a first aid and CPR instructor.  I
12   taught that.  And then the ALERRT training that we're
13   currently teaching has a medical block in it.
14        Q    Does ALERRT stand for something?
15        A    Yes.
16        Q    What does it stand for?
17        A    Advanced Law Enforcement Emergency Rapid
18   Response Training.
19        Q    Thank you.  During your time at Precinct 1,
20   have you developed or created training materials for
21   other officers?
22        A    Yes.
23        Q    Which training materials did you create?
24        A    I helped write the vehicle assault high-risk
25   vehicles for SWAT.  I wrote lesson plans on accident
```

```
 1  you -- sorry?  Oh.
 2           Have you been involved in situations where you
 3  have threatened to release your K-9 and that the threat
 4  alone was enough to gain compliance by a suspect?
 5                MR. CLARK-ANSANI:  Objection.  Leading.
 6  Vague.  Confusing.
 7                THE WITNESS:  Yes.  Many times.
 8  BY MS. VINSON:
 9      Q   Did that in fact happen in this case with Mr.
10  Gray?
11                MR. CLARK-ANSANI:  Objection.  Leading.
12                THE WITNESS:  Yes.  He surrendered.
13                MS. VINSON:  Okay.  Just give me a couple
14  more minutes to look at my notes.  I should be almost
15  concluding.
16                THE PROCEEDINGS OFFICER:  Can I take us
17  off the record?
18                MS. VINSON:  Thank you.
19                THE PROCEEDINGS OFFICER:  Taking us off.
20       (Off the record.)
21                THE PROCEEDINGS OFFICER:  Back on record
22  5:20 p.m., Eastern Time.
23                MS. VINSON:  (Indiscernible - audio
24  disruption) questions.
25                MR. CLARK-ANSANI:  Okay.  We don't have
```

```
 1  any further questions.
 2              MR. BUTT:  Read and sign.  Read and sign.
 3              THE PROCEEDINGS OFFICER:  Thank you.  I
 4  appreciate that.
 5              And then Mr. Clark, the -- there's just a
 6  few questions I need to ask before we go off the record.
 7              Mr. Clark, the certified transcript is
 8  included with your order.  I just wanted to confirm you
 9  wanted to be getting the transcript?
10              MR. CLARK-ANSANI:  Yes, please.
11              THE PROCEEDINGS OFFICER:  Okay.
12              And then Ms. Vinson, would you like to
13  purchase a copy of the transcript?
14              MS. VINSON:  Yes, please.
15              THE PROCEEDINGS OFFICER:  Okay.
16              And then Mr. Butt, would you like to
17  purchase a copy of the transcript, sir?
18              MR. BUTT:  No.  Thank you.
19              THE PROCEEDINGS OFFICER:  Okay.
20              And Ms. Francis is with you, right, Mr.
21  Clark?
22              MR. CLARK-ANSANI:  Yes.
23              THE PROCEEDINGS OFFICER:  Okay.  Perfect.
24  I don't think there's anybody else.
25              I'm going to go ahead and take us off the
```

```
 1               UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF TEXAS

 3   _____

 4   KERRY LEE THOMAS,

 5           Plaintiff,

 6      v.                               Civil Action No.:

 7   ERIC M. BRUSS, WAYNE SCHULTZ,        4:23-cv-00662

 8   & KEITH MORRIS IN RE ESTATE OF

 9   ROBERT JOHNSON,

10           Defendants.

11   _____

12                 REPORTER'S CERTIFICATION

13           DEPOSITION OF LIEUTENANT STUART RED

14                 Wednesday, August 6, 2025

15   _____

16

17      I, KINDEL MCDERMOTT, Court Reporter certify:

18      That the witness, LIEUTENANT STUART RED, was duly

19   sworn by the officer and that the transcript of the oral

20   deposition is a true record of the testimony given by

21   the witness.

22      That the original deposition was delivered to

23   ALESSANDRO CLARK-ANSANI;

24      That the amount of time used by each party at the

25   deposition is as follows:
```

```
 1        TOTAL TIME ON THE RECORD:  4 hours, 20 minutes
 2        ALESSANDRO CLARK-ANSANI - From page 8 to page 158
 3        CELENA C. VINSON - From page 159 to page 171
 4
 5        That pursuant to information given to the
 6   deposition officer at the time said testimony was taken,
 7   the following includes counsel for all parties of
 8   record:
 9
10        MR. ALESSANDRO CLARK-ANSANI - Attorney for
11        Plaintiff
12        MS. BRITTANY FRANCIS - Attorney for Plaintiff
13        MS. CELENA C. VINSON - Attorney for Defendants,
14        Eric M. Bruss and Wayne Schultz
15        MS. ALEXA GOULD - Attorney for Defendants, Eric M.
16        Bruss and Wayne Schultz
17        MR. JAMES BUTT - Attorney for Witness
18
19        And I further certify that I am neither counsel
20   for, related to, nor employed by any of the parties or
21   attorneys in the action in which this proceeding was
22   taken, and further that I am not financially or
23   otherwise interested in the outcome of the action.
24        Further certification requirements pursuant to Rule
25   203 of the TRCP will be certified to after they have
```

```
 1   occurred.
 2        Certified to by me this 19th day of August 2025.
 3
 4
 5                    [signature]
 6   _____
 7        Kindel McDermott
 8        REMOTE LEGAL, CDR-3527
 9        11 Broadway,
10        New York, New York 10016
11        800-752-0155
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```