IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KERRY LEE THOMAS,<br>　*Plaintiff*, | §<br>§<br>§ | |
| V. | §<br>§ | Civil Action No. 4:23-cv-00662 |
| ROBERT JOHNSON,<br>ERIC M. BRUSS,<br>WAYNE SCHULTZ,<br>and THE ESTATE OF<br>ROBERT JOHNSON<br>　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

**DEFENDANTS ERIC M. BRUSS AND WAYNE SCHULTZ'S
RESPONSE TO PLAINTIFF'S *DAUBERT* MOTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................................iii

RESPONSE TO MOTION TO EXCLUDE REPORT AND TESTIMONY OF TERRY
ANDERSON .....................................................................................................................................1

I. Anderson's Expert Report and Testimony Should Not Be Excluded Because His Methodology
Is Reliable. .................................................................................................................................1

    A. Thomas's speculative claims of bias do not provide a basis for excluding Anderson............1

    B. Anderson's testimony is admissible because he properly applied the *Graham* factors. ..........3

    C. Anderson's methodology is reliable because he properly considered and applied relevant
use of force policies. ..........................................................................................................7

II. Anderson's Opinions Will Assist the Trier of Fact and Do not
Amount to Legal Conclusions..................................................................................................9

III. Anderson's Testimony Regarding "Suicide by Cop" Is Properly Based on His Experience and
Will Assist the Trier of Fact. ..................................................................................................11

RESPONSE TO LIMIT TESTIMONY OF STUART RED ................................................11

I. Lt. Red's opinions and expertise are based on his experience and knowledge and review of the
relevant facts. ..........................................................................................................................11

II. Lt. Red will not provide improper legal conclusions. .....................................................12

PRAYER AND CONCLUSION ..................................................................................................13

CERTIFICATE OF SERVICE .....................................................................................................13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Campbell v. City of Indianola*,
   117 F. Supp. 3d 854 (N.D. Miss. 2015) ...................................................................................6

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ...................................................................................................1, 6, 9, 12

*Elcock v. Kmart Corp.*,
   233 F.3d 734, 751 n.8 (3d Cir. 2000) .......................................................................................1

*Flores v. City of Palacios*,
   2005 WL 6745899 (S.D. Tex. Nov. 22, 2005) .......................................................................10

*Flores v. Harris*,
   No. CV H-17-3817, 2019 WL 1426313 (S.D. Tex. Mar. 29, 2019) .......................................10

*Graham. Graham v. Connor*,
   490 U.S. 386 (1989) .........................................................................................................passim

*Jones v. Cannizzaro*,
   514 F. Supp. 3d 853 (E.D. La. 2021) .......................................................................................2

*Kingsley v. Hendrickson*,
   576 U.S. 389, 397 (2015) .........................................................................................................6

*Molina v. Collin Cnty., Tex.*,
   2017 WL 4876194 (E.D. Tex. Oct. 27, 2017) ........................................................................10

*Neal v. City of Hempstead, Tex.*,
   2014 WL 3907785 (S.D. Tex. Aug. 11, 2014) .......................................................................10

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ............................................................................................ 10, 11

*Puga v. RCX Sols., Inc.*,
   922 F.3d 285 (5th Cir. 2019) ........................................................................................6, 9, 12

*Ramirez v. Escajeda*,
   2021 WL 1131721 (W.D. Tex. Mar. 24, 2021) .......................................................................4

*Ramirez v. Knoulton*,
   542 F.3d 124 (5th Cir. 2008) ................................................................................................3, 4

*Roake v. Brumley*,
 756 F. Supp. 3d 219 (M.D. La. 2024), *hearing in banc denied*, 132 F.4th 748 (5th Cir. 2024)..................................................................................................................................2

*United States v. Perry*,
 35 F.4th 293 (5th Cir. 2022) ...................................................................................................12

**DEFENDANTS ERIC M. BRUSS AND WAYNE SCHULTZ'S
RESPONSE TO PLAINTIFF'S *DAUBERT* MOTION**

Defendants Eric M. Bruss and Wayne Schultz file this Response to Plaintiff Kerry Lee Thomas's *Daubert* Motion to Exclude Terry Anderson's Expert Report and Testimony and Limit Stuart Red's Expert Testimony as follows:

**RESPONSE TO MOTION TO EXCLUDE REPORT AND
TESTIMONY OF TERRY ANDERSON**

Thomas does not have a valid legal basis to exclude the admissible, reliable, and relevant testimony and opinions of Defendants' expert, Terry Anderson. The cherry-picked and misrepresented statements Thomas relies on do not support exclusion. Anderson has been a police officer since 1988, a certified canine handler since 1991, and has served as an expert witness between 20-25 times. Exhibit A, Anderson Deposition Transcript 48:12-23; Dkt. 126-1, pp. 2-4. He is also President of the National Police Canine Association and owns a canine training and handling company. *Id.* Anderson's opinions are grounded in his extensive law enforcement experience, specialized canine-handling expertise, and thorough review of the objective evidence. Ultimately, Thomas's misplaced objections and disagreements with Anderson go to the weight of his testimony, not its admissibility, and should be resolved by the jury—not excluded by the Court.

**I.   Anderson's Expert Report and Testimony Should Not Be Excluded Because His Methodology Is Reliable.**

   **A.   Thomas's speculative claims of bias do not provide a basis for excluding Anderson.**

Thomas does not take issue with Anderson's qualifications, instead Thomas alleges that Anderson is biased in favor of police officers. Thomas himself admits that bias is not grounds for disqualification except in rare circumstances. This is not one of them.

To support his motion to exclude Anderson from testifying, Thomas relies on a footnote from a Third Circuit case. [Dkt. No. 126 at p. 7, citing *Elcock v. Kmart Corp.*, 233 F.3d 734, 751 n.8 (3d Cir.

1

2000]. However, this case does not support Thomas's argument. The Third Circuit declined to consider the expert's credibility, noting that credibility decisions are within the province of the jury.

In fact, the court instructed the lower court not to assess the expert's credibility when assessing the reliability of his methods and merely noted that credibility may be relevant in limited circumstances, such as when an expert falsely claims to have reviewed certain data. *Id.* As noted by Thomas, bias is not a ground for exclusion, but a matter which goes to the weight of the opinions offered and can best be addressed on cross examination. *Roake v. Brumley*, 756 F. Supp. 3d 219, 238 (M.D. La. 2024), *hearing in banc denied*, 132 F.4th 748 (5th Cir. 2024) *and aff'd*, 141 F.4th 614 (5th Cir. 2025); *Jones v. Cannizzaro,* 514 F. Supp. 3d 853, 865 (E.D. La. 2021) ("Defendant objects to the tone of Levenson's report as too adversarial and argues that she credits facts in the record that support her conclusion and discredits those that contradict it. This is not a valid criticism under Rule 702 and is best addressed on cross examination.").

Nevertheless, a full reading of Anderson's deposition transcript reveals that Anderson does not blanketly endorse police credibility, as Thomas suggests:

> Q: Okay. So just because an officer says something is true doesn't automatically mean it's true, right?
> A: That's correct.
> . . .
> Q: Do you always believe in an officer over another person?
> A: No.
> . . .
> A: Yeah. No. It – that's not always the case especially in dog cases. A lot of times you see – I have seen that they have -- whether they came and asked me about it, whether they showed me a video, never witnessed it firsthand, but I do -- am well aware of cases that policemen use the dog and then tried to justify the use on paper, and that's not happening. That's -- that's just as wrong as -- I mean, it's a lie. So, no. I do not always believe the policeman is always right. I look at the totality of all the facts that I have before I make a decision on anything like that. Do I weigh what they see as the policeman versus the camera? Absolutely. The camera is one dimensional. You -- you could only see what the camera sees. You don't see the totality of what that officer sees, hears, or feels on a particular scene.

Exh. A at 270:23–271:1; 271:24–272:24.

2

Moreover, Thomas attempts to portray Anderson's <u>unpaid</u> role as president of the National Police Canine Association as evidence of bias, when in fact it underscores his depth of expertise in the field. *Id.* at 40:4-6. By definition, experts are individuals with specialized knowledge and experience in their area of practice. They cannot be excluded because they are affiliated with a leading professional organization in that field. And Thomas's claim that Anderson misstated Bruss's NPCA certification status in an effort to "obscure the conflict of interest" is pure speculation and unsupported by the record. Anderson testified that he did not check the NPCA membership rolls prior to becoming an expert in this case. *Id.* at 42:16-20. Anderson also testified that there were "over 1,500" members in the NPCA. *Id.* at 32:3-10. That Anderson was not aware that Bruss had at one time been certified by the NPCA does not reflect bias but is instead a strained and unfounded attempt to discredit Anderson. In any event, such alleged credibility issues are properly addressed through cross-examination, not exclusion.

> **B.     Anderson's testimony is admissible because he properly applied the *Graham* factors.**

Anderson's method of evaluating the totality of the circumstances in determining whether force is reasonable is consistent with federal law. *Ramirez v. Knoulton,* 542 F.3d 124, 128 (5th Cir. 2008). Thomas's claim that Anderson "repeatedly credited the Defendant's belief that Mr. Thomas was armed" is FALSE. *See* Dkt. 126-1. The same holds true for Thomas's assertion that Anderson relied on Defendants' subjective beliefs rather than objective facts. Anderson lays out the "facts" he relied on to support his opinions on pages 5 through 9 of his report, and of the 63 facts he points to, none of them allege that the suspects were armed or even that dispatch reported that the suspects were armed. Dkt. 126-1, pp. 7-10. As such, Thomas's claim that Anderson relied on Bruss and Schultz's subjective beliefs is without merit.

Furthermore, Thomas ignores the more than twenty pages of Anderson's report in which Anderson meticulously analyzes the objective evidence—body worn camera footage, dashcam audio,

3

incident reports, and CAD report—and instead fixates on a handful of references to Johnson and Bruss stating on video that dispatch had reported the suspects were armed. But noting those recorded statements does not mean Anderson credited Johnson and Bruss's subjective beliefs. In fact, Anderson does not even mention that Johnson and Bruss asserted that dispatch advised them the suspects were armed until twenty-five pages into his thirty-four-page report. Dkt. 126-1, 26. There is no evidence that he gave these assertions any weight whatsoever. Anderson properly focused on the totality of the circumstances by analyzing the objective evidence.

> Q: Did what the officers believed when they were on the scene influence your report?
> . . .
> A: No. The situation that they were sent to influences my -- my thoughts and opinions because I've been there, done that. And again, I'll just as simply as you can, totality of circumstances have to be evaluated and reviewed continuously throughout the process. And you have an obligation -- you don't have a choice. You have an obligation to make the scene safe before anything else is completed.

Exh. A, Anderson Dep. at 89:2–13. Put simply, nothing in Anderson's report or testimony suggests that his conclusions were based on the officers' subjective beliefs rather than the objective facts, consistent with *Graham*. *Graham v. Connor*, 490 U.S. 386, 387 (1989). Therefore, this case is distinguishable from the *Ramirez* v. *Escajeda* case relied on by Plaintiff where the expert analogized the *Graham* standard to the idiom that "beauty is in the eye of the beholder," clearly demonstrating that he treated the *Graham* standard as subjective rather than objective. *Ramirez v. Escajeda*, 2021 WL 1131721, at *21 (W.D. Tex. Mar. 24, 2021). In *Ramirez*, the expert also "repeatedly accepted" the defendant's beliefs without adequately considering the objective evidence, explicitly stating in his report that the defendant's subjective belief was "an important and reasonable assumption given the information" available to him. *Id.* The expert further admitted that he relied on facts unavailable to the defendant in forming his opinion. *Id.* Here, by contrast, Anderson did not "repeatedly accept" Defendants' subjective beliefs, nor did he rely on evidence not known to the Defendants. Rather, he analyzed the objective evidence in a manner consistent with *Graham*.

Thomas also mischaracterizes Anderson's review of the CAD report. Contrary to Thomas's claim that Anderson deliberately chose not to review it, Anderson did review the report, though he admittedly did not thoroughly examine the final page. Exh. A at 186:6–15. Anderson testified that CAD reports do not tell the whole story and that information from dispatch alone is insufficient to evaluate the totality of the circumstances.

> Q: In distinguishing between situations where immediate action is needed and situations where there's more time to deescalate, should officers use information they're given by dispatch to make that determination?
> A: You can't make that determination just on information that you receive from dispatch. It's impossible.
> Q: Should it be part of the information they consider?
> A: Always part of it. That's why we have what we have, the totality of the circumstances.
> . . .
> A: . . . Dispatch call is partial information. It's not the totality of what they're going to be faced with. They can only talk about what they know. And they got a call received from a second -- their secondary. So they don't have everything. And what they do have may or may not be complete and – and inaccurate. So no. It's not going to affect my opinion at all.

*Id.* at 225:8–18; 265:20–266:2. Nevertheless, Anderson reviewed the entirety of the CAD report in question during his deposition and testified that it did not alter his opinions, reiterating that CAD reports do not always assist in evaluating the totality of the circumstances. *Id.* at 269:8–15.

> Q: Okay. Mr. Anderson, does anything in the CAD report change your understanding of the facts of this case?
> A: Not at all.
> Q: Is there any indication in the CAD report that dispatch said the suspects had a weapon?
> A: Nothing in the -- nothing in their log says that at all.
> Q: Does that fact change any of the opinions expressed in your report?
> A: Absolutely not because like I said earlier, dispatch doesn't have all the information. And you have to assume that they are armed, they -- they are violating – they're in a criminal offense. So then when you get there and you start contacting them and they're non -- non-compliant, you have no choice but to assume the potential for them being armed until proven otherwise, the totality of the circumstance.
> . . .
> Q: So is it still your opinion that the CAD report was incomplete?
> . . .
> A: It's complete with what's do -- with what dispatch had and what they gave out. That don't mean that it was in totality of everything that was involved in this criminal offense.

5

*Id.* at 267:6–23; 269:16–23. Thomas appears to contend that the CAD report is the sole relevant evidence. This is incorrect. Anderson properly based his opinions on a broader body of objective facts and explained why CAD reports alone are insufficient to evaluate the totality of the circumstances. Furthermore, Anderson does not base his opinions on the fact that Plaintiff was armed. He says the opposite. In any event, any questions or doubts regarding the bases and sources of Anderson's opinions go to the weight of the evidence, not its admissibility. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019).

Thomas's mischaracterization of Anderson's opinions does not stop there. He next alleges that Anderson opines on Johnson's mindset, when his report shows that Anderson was simply describing what he observed in the videos or stating the obvious. For example, Thomas takes issue with Anderson's line that "Sgt. Johnson arrived and observed two b/m, sitting in the car, *knowing* he was now outnumbered." Dkt. No. 126 at p. 13. It is undisputed that the video evidence clearly shows Johnson (one person) arriving on the scene where there are two suspects. Dkt. 118-10, Johnson Dashcam at 12:21:48. Logic confirms that two is more than one. Moreover, experts are permitted to rely on assumptions when reaching their opinions. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Finally, Thomas's dramatic assertion that "most damning of all, Anderson shared his incorrect opinion that not all of the three *Graham* factors have to be weighed in determining whether a use of force was reasonable" is unfounded. This is a red herring, as the applicable standard is objective reasonableness under the totality of the circumstances. "While the *Graham* factors are illustrative of 'the types of objective circumstances potentially relevant to a determination of excessive force,' the Supreme Court does 'not consider this list to be exclusive.'" *Campbell v. City of Indianola*, 117 F. Supp. 3d 854, 868 (N.D. Miss. 2015) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Anderson's entire testimony is consistent with evaluating the totality of the circumstances. Plaintiff's counsel gave

Anderson a series of confusing hypotheticals where he responded that depending on the circumstances not all the *Graham* factors have to be present to use force on a suspect. Dkt. 126-3, pp. 52-70. However, Anderson clearly applied the *Graham* factors in his review of this case and in forming his opinion as reflected in his expert report and his deposition testimony. Exh. A at 231:14-233. It was Thomas's counsel who directed Anderson not to apply the *Graham* factors to this case, which explains why Anderson instead testified about their application to other scenarios—particularly where non-severe crimes may escalate into severe crimes—a point relevant to the case at hand. *Id.* at 233:11-16.

In sum, Thomas's objections rest on mischaracterizations of Anderson's testimony, but Anderson's opinions remain firmly grounded in a comprehensive review of the objective evidence, consistent with the *Graham* standard, and fully admissible under the law.

> C. **Anderson's methodology is reliable because he properly considered and applied relevant use of force policies.**

Thomas's assertion that Anderson ignored relevant police policies that contradict his opinions is baseless. The record shows that he reviewed and considered all applicable policies. *Id.* at 189:16–22; 192:15–20; 211:25–212:12. Like Plaintiff's expert, Anderson included in his report the portions of police policies that he believed were most relevant to the case. However, Thomas complains that Anderson only stated the underlined portion from the International Association of Chiefs of Police's (IACP) policy on Patrol Canines below:

> [I]t is worth mentioning that when officers are aware that an individual is affected by mental illness, is under the severe influence of drugs or alcohol, or has a developmental disorder such as autism spectrum disorder, some additional caution in canine deployment should be considered, where reasonably possible. These individuals may not have the ability to comprehend the threat associated with the deployment of a law enforcement canine against them, may fail to comply with orders or not fully understand orders of the canine handler, or may act in an inappropriate or bizarre manner that serves as a signal to the canine to take or continue aggressive action beyond that which would be typically necessary. <u>Officers may not be aware of the mental state or condition of an individual, but, even when this information is available, it may be necessary to deploy a canine when the severity of the crime warrants this action and alternative measures are either not available or inadequate to gain control of the individual.</u>

7

It is telling that the language Thomas complains was not included in Anderson's report says that an individual may be unable to comply with an officer's orders if he is under the influence of narcotics or has a mental illness. Up to now, Thomas has maintained that he "fully complied." Additionally, Thomas objects to the exclusion of another portion of the IACP policy, which notes that such individuals may exhibit inappropriate or bizarre behavior—characterizations he has repeatedly rejected, maintaining that his conduct was neither irrational nor inappropriate. Given that Thomas has neither presented testimony nor advanced any argument that his alleged noncompliance was the result of intoxication or mental illness—and has, in fact, consistently denied any noncompliant or bizarre behavior—there was no reasonable basis for Anderson to include such language in the record.

Anderson's opinion that the Defendants "did not know Thomas's intentions or if he was under the influence of alcohol, on drugs, or mentally ill" is consistent with the facts and the policy. Dkt. 126-1, p. 19. Therefore, it was not improper for Anderson to leave out the other portions of the policy and it is certainly not a valid basis to exclude Anderson as an expert witness.

Similarly, Thomas takes issue with Anderson's omission of the following Precinct 1 policy:

> Prior to responding to a subject's resistance, and when safe and reasonable to do so, peace officers should determine whether the subject's behavior constitutes willful refusal to comply with lawful orders or an inability to comply based upon other factors, such as medical conditions, mental impairment, developmental disability, physical limitation, language barrier, drug interaction, etc.

Dkt. 126-7 at 1–2.

Thomas cannot now reverse course and argue that Anderson failed to consider information that was neither before him nor consistent with Thomas's longstanding denial of such conduct—and then attempt to use that same information against Bruss and Schultz.

Next, Thomas alleges that Anderson should have included a provision within Precinct 1's Canine Policy that "incorporate[s] elements of the *Graham* standard" Dkt. No. 126-8 at 16. Anderson

already applies the *Graham* standard throughout his report and emphasizes the importance of considering the totality of the circumstances in his testimony. Dkt. 126-1, pp. 12 & 22. He also testified that he reviewed and considered this policy in his analysis. Exh. A at 211–212. Thomas's objection is simply unfounded, as omitting a policy provision that is redundant of language already contained in a report is not a valid basis for exclusion.

Finally, Anderson did not "ignore" Precinct 1 policies regarding the use of the lowest level of force as Thomas asserts. Anderson testified that he considered and applied these policies in his report and agreed with Precinct 1's position that officers should use the least amount of force necessary. *Id.* at 192:3–193:8. And contrary to Thomas's claim, Anderson correctly stated in his report that the law does not require an officer to use the least intrusive means of force available, so long as the force used is reasonable. Dkt. No. 126-1, p. 26. The applicable standard is whether an officer's use of force was objectively reasonable under the totality of the circumstances—not whether the lowest level of force was employed. *Graham*, 490 U.S. at 396. Thus, Thomas's objection is a distraction, as Anderson's agreement with Precinct 1's policy and accurate statement of the governing standard in no way undermines the reliability of his testimony.

Anderson's testimony and report regarding use-of-force policies are both accurate and reliable. Any questions concerning the bases and sources of Anderson's opinion go to the weight of the evidence, not its admissibility, and are matters for the jury to resolve. *Puga*, 922 F.3d at 294. Likewise, any disagreement Thomas may have with Anderson's conclusions affects only the weight of the evidence, not its admissibility. *Daubert*, 509 U.S. at 589.

## II. Anderson's Opinions Will Assist the Trier of Fact and Do not Amount to Legal Conclusions.

All of Anderson's opinions—including Opinion #3—are based on "the information [he] reviewed as well as [his] training, experience, expertise, education, and familiarization with professional publications." Dkt. No. 126-1, p. 10. These are proper bases for expert testimony, as the Fifth Circuit

9

has approved expert testimony that is "based mainly on [the expert's] personal observations, professional experience, education, and training." *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 247 (5th Cir. 2002). As noted above, Anderson has extensive experience with police canines, having been a certified handler since 1991. Dkt. 126-1, p. 2. Therefore, his specialized background makes him uniquely qualified to opine on Johnson's use of a canine to apprehend Thomas and Defendants' duty to intervene to assist the trier of fact understand the facts from a reasonable *officer's* perspective, in contrast to a reasonable *person's* perspective. *Flores v. City of Palacios*, 2005 WL 6745899, at *1 (S.D. Tex. Nov. 22, 2005); *see also Molina v. Collin Cnty., Tex.*, 2017 WL 4876194, at *3 (E.D. Tex. Oct. 27, 2017) (striking two police officers in an excessive force case involving a canine because even though both officers were licensed police officers and certified by the Texas Commission on Law Enforcement, neither were certified canine handlers or had any specialized knowledge of canine deployments).

Additionally, Anderson has not, and will not, offer legal conclusions as to whether Defendants violated Thomas's constitutional rights. Rather, Anderson will properly "testify as to his opinion on the reasonableness of an action, or what a properly trained officer might do" based on his experience and review of evidence. *Neal v. City of Hempstead, Tex.*, 2014 WL 3907785, at *5 (S.D. Tex. Aug. 11, 2014) (finding that expert's opinions were reliable because "Mr. Staton's report and testimony is based on his long personal experience in law enforcement, a relevant and extensive training background, and personal review of the materials at issue. He singles out specific facts important in reaching his opinion, such as that Mr. Houston was fleeing, that he had resisted Sgt. Fausset, and the presence or threat of violence."). Anderson's testimony regarding Defendants' compliance with policies and police standards will also help the trier of fact determine whether the officers' force was excessive. *Flores v. Harris*, No. CV H-17-3817, 2019 WL 1426313, at *12 (S.D. Tex. Mar. 29, 2019) (concluding that police expert's "opinions on whether the officers' conduct conformed to professional standards of care is relevant to determining whether the force [the officer] used was excessive").

10

Anderson does not offer legal conclusions but instead provides proper expert context for evaluating the officers' conduct. His testimony is therefore admissible.

### III. Anderson's Testimony Regarding "Suicide by Cop" Is Properly Based on His Experience and Will Assist the Trier of Fact.

Anderson's testimony regarding "suicide by cop" is based on his extensive law enforcement experience, not in any psychological diagnosis.

> Q: Okay. Have you ever encountered someone who was trying to commit suicide by cop?
> A: **Me personally**?
> Q: Yes.
> A: **Multiple SWAT situations**.

Exh. A at 184:17–21. He does not opine that Thomas was suicidal or offer any medical or psychological conclusion. Rather, based on his years in the field, Anderson can explain how officers are trained to recognize and respond to behaviors that may indicate an individual is attempting to provoke the use of force. *Pipitone,* 288 F.3d at 247. This testimony will assist the trier of fact in evaluating the reasonableness of Defendants' actions under the totality of the circumstances.

## RESPONSE TO LIMIT TESTIMONY OF STUART RED

Thomas does not deny that Lieutenant Red is qualified to testify as an expert witness in this case. In fact, Thomas is not objecting to Lt. Red's testimony regarding "general police practices and policies." Dkt. 126, p. 23. Thomas contends that Lt. Red's testimony should be limited on the grounds that it lacks a sufficient factual basis, does not employ an appropriate methodology, and relies on subjective evidence. However, these assertions are without merit and are not supported by the record or applicable law. Accordingly, Mr. Thomas's request to exclude or limit Lt. Red's testimony should be denied.

### I. Lt. Red's opinions and expertise are based on his experience and knowledge and review of the relevant facts.

Thomas claims that Lt. Red did not adequately review the materials he relied on and, therefore, his opinions are not based on "sufficient facts." Dkt. 126, p. 22. Lt. Red testified he reviewed the

11

body-worn cameras for all three defendants, Johnson, Bruss and Schultz, and spent about two hours watching video footage. Exhibit B, Lt. Red Deposition 74:5-12; 80:8-15. According to Thomas, two hours is not enough. However, the encounter between Thomas and officers from the time the first officer arrives at the scene to the time when the canine is removed from Thomas spans a little over 6 minutes. In two hours, Lt. Red could have reviewed the video footage numerous times. Even reviewing the body worn cameras for all three officers from the moment their cameras activate to the time the canine is removed from Thomas should take a total of 30 minutes (approximately 10 minutes of footage for each officer). *See* Dkts. 115-6, 115-7 & 115-8. Lt. Red testified that he also reviewed the CAD reports and incident reports in this case. Exh. B at 80:18-20 & 83:13-25. Thomas argues that Lt. Red failed to review the body-worn camera footage from bystander officers on the scene who are not parties to the lawsuit. While this criticism is of limited relevance and does not undermine the admissibility of Lt. Red's testimony, Mr. Thomas is free to raise this point before the jury and explore it through cross-examination.

Thomas's assertion that Lt. Red has not founded his opinions on sufficient facts lacks credence, as does his claim that Lt. Red relies on subjective evidence. Thomas cannot point to any subjective evidence that Lt. Red improperly considered. In fact, when asked specifically if he considered that the officers believed Thomas was armed, Lt. Red said, no. *Id.* at 126:1-8.

## II.     Lt. Red will not provide improper legal conclusions.

While the Court has considerable flexibility in admitting expert witness testimony, the court must focus on the principles and methodology rather than the conclusions generated. *Daubert*, 509 U.S. at 595, 113 S. Ct. 2786  The rejection of expert testimony is the exception rather than the rule, and the court's core role is to ensure that only reliable and relevant evidence reaches the jury. *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quoting *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019)).

While serving as a Sergeant with the Houston Police Department, Lt. Red reviewed thousands of use-of-force reports, approximately half of which involved the deployment of a K-9. *See Id.* at 27:1–18. Prior to offering testimony in this matter, Lt. Red—then employed at Precinct 1 and a certified canine handler—was asked by his Chief to review the facts of this case and assess whether an officer had used excessive force. *Id.* at 39:11-24. Lt. Red's opinions are based on his extensive experience, personal involvement in use-of-force reviews, and specialized knowledge as a certified canine handler. His testimony is both reliable and relevant under the applicable legal standards. Lt. Red will confine his opinions to whether or not the officers' actions were consistent with applicable policies and standards. Mr. Thomas has not provided a valid basis for limiting Lt. Red's testimony, and accordingly, his motion should be denied.

## **PRAYER AND CONCLUSION**

For the foregoing reasons, Defendants Eric M. Bruss and Wayne Schultz respectfully request that the Court deny Plaintiff's motion to exclude the testimony and report of Defendants' expert, Terry Anderson, and deny Plaintiff's motion to limit the testimony of Stuart Red. Defendants also request that the Court grant such other and further relief to which Defendants may be justly entitled.

          Respectfully submitted,

          **Thompson & Horton LLP**

          By:   */s/ Celena Vinson*
                 Celena Vinson
                 State Bar No. 24037651
                 cvinson@thompsonhorton.com
                 Alexa Gould
                 State Bar No. 24109940
                 agould@thompsonhorton.com

          3200 Southwest Freeway, Suite 2000
          Houston, Texas 77027
          Telephone: (713) 554-6742
          Fax: (713) 583-8884
          **ATTORNEYS FOR DEFENDANTS**
          **BRUSS AND SCHULTZ**

## CERTIFICATE OF SERVICE

       On October 17, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

          */s/ Celena Vinson*
          Celena Vinson

4905-3545-3044, v. 1